Statement.

# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## FERGUSON & CO. AND OTHERS *v.* DAUGHTREY & OTHERS.

### February 11, 1897.

1. FRAUDULENT CONVEYANCES—*How fraud established.*—Insolvency does not deprive the owner of property of the right to sell it, unless the sale be made with intent to hinder, delay and defraud his creditors ; and even then, the title of the purchaser will not be invalidated if the sale is for valuable consideration, and the purchaser has no notice of the fraudulent intent of the grantor. It is not necessary, however, to prove positive knowledge of the fraudulent intent of the grantor. It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and would prompt him to inquire into the transaction, which inquiry would necessarily lead to a discovery of the inculpatory facts. Fraud may be established by circumstances alone. In the case at bar the evidence establishes the fraud of the grantor and the guilty knowledge of the grantee.

2. EVIDENCE—*Examination of adversary—Adversary's evidence may overcome his answer.*—Under the provisions of Sec. 3351 of the Code, a party calling his adversary to testify as a witness may examine him according to the rules applicable to cross-examination, and while he may not impeach such adversary as a witness, he is entitled to the benefit of all facts elicited from him tending to prove the illegality of the transaction under investigation, notwithstanding his denial of fraud. So where a party seeking to impeach a transaction for fraud, calls as witnesses the parties to the transaction, which, owing to the exigencies of the case he may be compelled to do, and proves by them facts from which the law infers fraud, or which are inconsistent with good faith, and outweigh and overcome their denial of fraud, effect should be given to the facts so proved and the transaction be annulled.

Appeal from a decree of the Circuit Court of Nansemond county, pronounced October 13, 1894, in a suit in chancery wherein the appellants were the complainants and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*John W. Happer* and *E. E. Holland*, for the appellants.

*J. F. Crocker* and *W. J. Kilby*, for the appellees.

RIELY, J., delivered the opinion of the court.

The plaintiffs, who are creditors of the late mercantile firm of Daughtrey & Hines, composed of Beatrice J. Doughtrey and W. E. Hines, filed their bill to impeach and have declared fraudulent and void three deeds of conveyance made by her and her husband of her real estate to Eugenia A. Blacknall.

Insolvency does not deprive the owner of the right to sell his property, unless the sale is made with intent to delay, hinder, or defraud his creditors; and the law does not then invalidate the title of the purchaser, if the sale is for valuable consideration, and the purchaser has no notice of the fraudulent intent of the grantor. The inquiry, therefore, is as to the intention of the grantor in making the conveyances, and if that was illegal, whether the grantee had notice of it.

First, as to the intention of the grantor.

Beatrice J. Daughtrey, the owner and grantor of the property, resided, and the property conveyed, is situate, at Suffolk, Va. The grantee is her sister, and resided at Atlanta, Ga. The husband of Mrs. Daughtrey left their home at Suffolk on October 1, 1891, and went to Atlanta, whence he returned home on October 18, 1891. The matters sought to be impeached were transacted by him during this visit. The record does not disclose that he went to Atlanta for any other purpose than to sell his wife's property to her sister. The sale was accomplished, and the deeds delivered before he returned home. The purchase price was $8,100. Deducting therefrom the liens subsisting on the property, amounting to $4,300, there was left a balance of $3,800. He owed the grantee $125, which

being also deducted, there remained the sum of $3,675, for which sum the grantee executed her note to Mrs. Daughtrey. The sale having been consummated, he returned home, bringing with him the deeds to be recorded, and the note for $3,675.

The note was given by Mrs. Daughtrey to her husband to do with it as he pleased. Being asked on her examination to produce it for inspection, she failed to do so, and answered that her husband had disposed of it. To whom or in what way he had disposed of it she did not disclose.

The deeds were admitted to record on November 2, 1891, and eight days thereafter, on November 10, 1891, the firm of Daughtrey & Hines made a general assignment of all effects for the benefit of their creditors.

The circumstances under which the sale was made and its very unusual terms plainly manifest an illegal purpose.

At the time it took place the firm of Daughtrey & Hines was utterly insolvent, and there was no way by which its creditors could obtain satisfaction of their debt except by resorting to the individual property of Mrs. Daughtrey. The property so sold and conveyed constituted all or substantially all of the estate of the grantor, and included the residence and home of herself and her husband. The only reason stated by her for making the sale was that her husband thought he might do better elsewhere. This, however, constituted no ground for seeking a purchaser in a near relative in the distant city of Atlanta, for the real estate market at Suffolk was then active and upward, and there would have been no trouble in making an advantageous sale at home, if that was the real purpose. Nor does the subsequent conduct of herself and her husband confirm her explanation of their reason for the sale. She has not changed her home, nor he his place of business. Nor does it appear that he had sought business elsewhere. She continues to occupy her same residence and home at Suffolk, and her sister to reside in Atlanta, while he

has become the agent of the latter to look after the property so sold and conveyed to her.

The grantee was possessed of no income, and was only the owner of an unimproved lot at Atlanta, for which she had paid $1,200, and had $100 lent out. This was her only means of paying the purchase money of $8,100 for the property. Not a dollar of money passed. There was no cash payment, and the part of the purchase money in excess of the liens was upon a credit of five years, without interest, and without security, not even a lien therefor being retained on the property sold.

Both in her answer and in her deposition the grantor denied that the sale and conveyances were made with a fraudulent intent, or that she knew of the insolvency of the firm of Daughtrey & Hines, though in the assignment made very shortly afterwards, which was executed by her as well as by W. E. Hines, the other partner, judgments lately recovered against the firm are referred to and secured. She admitted that her husband looked after her interest, and that she conversed and consulted with him in reference to the conduct of the business of the firm and as to its financial standing, though she could not recollect that she did so about the time the sale and conveyances in question were made. It is to be presumed that he as her agent knew of the insolvency of the firm, and it was he who went to Atlanta and made the sale of her property. It is almost incredible that under the circumstances she was not made aware of the financial condition of the partnership.

However this may be, without referring to other inculpatory and unexplained matters disclosed by the record, which might be very properly adverted to, if it was necessary, the facts already mentioned produce on the mind an irresistible conclusion that the conveyances sought to be impeached were made with the intent condemned by the statute.

Next, as to the notice to the grantee of the unlawful intent of the grantor.

It was not necessary, in order to avoid the conveyance, to prove that she had positive knowledge of the fraudulent intent of the grantor. Express proof of notice is rarely attainable. The doer of an illegal act is not wont to proclaim his unlawful purpose. As the illegal intent may be a just and legal implication from the evidence, so may notice of the illegal intent be a just and legal imputation from knowledge possessed by the grantee. It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.

In Bump on Fraud. Con., sec. 184 (4th Ed.), the law on this subject is thus stated: "It is not necessary that the grantee shall have actual knowledge of the debtor's intent to delay, hinder, or defraud his creditors in order to render the transfer void. A knowledge of facts sufficient to excite the suspicions of a prudent man, and to put him on the inquiry, or to lead a person of ordinary perception to infer fraud, or the means of knowing by the use of ordinary diligence, amounts to notice, and is equivalent to actual knowledge in contemplation of law. The nature and circumstances of the transaction may sometimes be such as must apprise the grantee of its character and object. *Res ipsa loquitur.* If he has notice of facts sufficient to put him on the inquiry, he cannot be deemed a *bona fide* purchaser.

The grantee resided, as we have seen, at a great distance from the grantor and from the property. She had not seen it for a year or two, and was not informed as to its condition or value. She knew that by the sale her sister was stripping herself of all her property and depriving herself of the home she had occupied for eleven years, without assigning any rea-

son for so important a step, for the grantee states in her deposition that no "particular" reason was assigned for making the sale, and that she knew of none except that her sister wanted her to live there. She knew that her sister was a member of the firm of Daughtrey & Hines, and, although she denied any knowledge of the insolvency of the firm, she was nevertheless made aware from the liens on the property conveyed to her that her sister was otherwise heavily indebted. She also knew that there was great activity at that time in the sale of real estate at Suffolk, and that the property could be readily disposed of at home on the usual terms. Yet she, a person of very limited estate, was sought out as a purchaser in her distant home, and a sale made to her of all her sister's property, without requiring the payment down of any money, but upon an unusual credit, without interest, without security, and with the knowledge that she was without the means of paying for it. These facts and circumstances were not merely calculated to awaken suspicion and put her upon inquiry, but were sufficient in themselves to apprise her of the character and object of the transaction, and to charge her with notice of the unlawful intent of her grantor. It is well settled that fraud may be established by circumstances  Experience proves that in most cases circumstantial evidence is the only proof of fraud that can be adduced. The motives and intentions of parties can only be judged of by their actions, and the nature and character of the transaction in which they are engaged. These often furnish more conclusive evidence than the most direct testimony.

The subsequent conduct of the parties strengthens the conclusion reached as to the illegality of the transaction. The situation remains the same. The testimony shows that there has been no change in the actual possession of the property. The grantee continues to reside in Atlanta, and the grantor to occupy her home in Suffolk. And while the grantee states that she constituted the husband of her sister, her agent, to

rent out the property, pay the taxes and insurance, and col-
lect the rents, and claims to have rented the home place to
her sister at the price of $25 per month, she admits that she
has never received any rent, and that no account of rents has
ever been rendered to her.    She attempts to excuse the failure
to collect the rents upon the ground that she expected them
to be credited on her note, but at the same time she admits
that she does not know whether the note is negotiable or not,
nor who has it, and does not seem to think that this is a mat-
ter of any interest to her.

Though bearing in mind that the presumption of law is in
favor of innocence and honesty, it. is not possible to consider
the record and avoid the conclusion that the conveyances
sought to be impeached were made by the grantor and ac-
cepted by the grantee in violation of law.

In arriving at this conclusion, we have not been unmindful
of the fact that the principal testimony in the case was given
by the grantor and grantee, that they were called by the
plaintiffs to testify in their behalf, and that both in their an-
swers to the bill, which waived answers under oath, and in
their depositions, they denied the charge of fraud.

The plaintiffs were entitled under the statute (Code, sec.
3351) to examine the grantor and grantee, they being parties
having an adverse interest, according to the rules applicable
to cross examination; and, while this privilege did not confer
the further right to impeach them as witnesses, the plaintiffs
were nevertheless entitled to the benefit of all facts elicited
upon their examination which tended to prove the illegality of
the transaction under investigation, notwithstanding their
denial of the fraud.    As a party calling a witness is not
precluded from proving the truth of any particular fact by
any other competent testimony, in contradiction of what the
witness may have testified (Greenleaf on Ev., 1 Vol., sec. 443;
and *Beckner* v. *Koch*, 104 N. Y. 394), so where he calls a
party having an adverse interest, and such party deposes to

facts which support the contention of the party calling him, and conflicts with his own, the contention of the former must prevail, and that of the latter fail, however positively asserted. Thus, where a party seeking to impeach a transaction for fraud, calls as witnesses the parties to the transaction, which, owing to the exigencies of the case, he is obliged to do, and proves by them facts from which the law infers fraud, or which are inconsistent with good faith, and outweigh and overcome their denial of the fraud, effect must be given to the facts so proved and the transaction be annulled. We can perceive no sound reason why the same result should not follow whether the facts be elicited or wrung from the actors themselves, or be proved by other testimony.

Right and justice required that the grantor should devote the residue of her property, after the satisfaction of the liens thereon, to the payment of her other debts. This was not done. The grantee has not paid anything for the property. The result of our determination of the case is to place the parties in the same situation as if the conveyances had never been made, and to subject the property to the payment of the creditors of the grantor.

The decree of the Circuit Court must be reversed, and a decree entered vacating the deeds referred to, and subjecting the property therein conveyed to the payment of the debts of the plaintiffs, for which they are entitled to a lien on the property from the time of bringing their suit. Code, sec. 2460.

*Reversed.*