| 98 | 471 |
| 98 | 728 |
| 98 | 471 |
| 100 | 643 |

# Wytheville.

## NEWBERRY v. BANK OF PRINCETON.

### JULY 5, 1900.

#### Absent, Riely, J.*

1. FRAUDULENT CONVEYANCES—*Notice to Grantee—How Proved.*—If the grantee in a fraudulent deed had knowledge, at the time of the conveyance, of facts and 'circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and such inquiry would have necessarily led to a discovery of the fact with notice of which he is sought to be charged, he will be considered to be affected with such notice, whether he made inquiry or not. But while the fact of notice may be inferred from circumstances, as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides.* In the case in judgment, such proof has not been furnished.

2. CHANCERY PRACTICE—*Suit to Avoid Conveyance—Notice of Fraud Before Payment—Notice of Execution Against Grantor.*—In a suit to set aside a fraudulent deed, where it appears that the grantee acquired notice of the fraud before he had paid bonds given for deferred payments of purchase money, and also had notice of the plaintiff's execution against his grantor, a decree should be entered against the grantee in favor of the plaintiff for the amount of such bonds and the interest thereon from maturity.

Appeal from a decree of the Corporation Court of the city of Radford, pronounced June 16, 1899, in a suit in chancery therein pending, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

*Judge Riely was prevented by sickness from attending this term.

The opinion states the case.

*Henson & Mason,* for the appellant.

*S. W. Williams,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

One of the objects of this suit was to set aside a conveyance of land made by James H. Mustard and wife to Henry Newberry, the appellant, upon the ground that it was executed to hinder, delay, and defraud the creditors of the male grantor. Upon the hearing of the cause, the court was of opinion that the deed was executed by the grantor, James H. Mustard, with the fraudulent intent charged, and that the grantee, Newberry, "had knowledge of the existence of such facts as would have put him on enquiry as to such fraudulent intent, and therefore warrants the court in holding him responsible for the fraudulent intent with which the deed was executed," and so decreed.

From that decree this appeal was taken.

The finding of the court as to the fraudulent purpose of the grantor in making the conveyance is conclusively shown by the record, and is not controverted here.

The trial court further found, as is evident from its decree, and in that view we concur, that the record does not show that the grantee had actual knowledge of the grantor's unlawful intent. Although the grantee did not have such knowledge, he may have made his purchase under such circumstances as will prevent him from being deemed a *bona fide* purchaser. If he had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and such inquiry would have necessarily led to a discovery of the fact, with notice of which he is sought to be

charged, he will be considered to be affected with such notice, whether he made enquiry or not. But while the fact of notice may be inferred from circumstances as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides*. *Ferguson* v. *Daughtrey*, 94 Va. 308, 312; *Fisher* v. *Lee, ante* page 159, and cases cited.

It appears that some time prior to November 5, 1886, the date of the conveyance in question, James H. Mustard became the first endorser on a negotiable note for Compton and Shannon for about $2,700, which was not paid at maturity, and suit was brought upon it against the makers and endorsers to the November term of the Circuit Court for Bland county. Compton and Shannon were heavily indebted at that time, and, although the owners of a large amount of valuable property, it was not sufficient to pay their debts when subjected. Mustard, the grantor, was the owner of the farm conveyed, and, being apprehensive of the solvency of Compton and Shannon, was endeavoring to prevent his farm from being subjected to the payment of the appellee's debt, either by conveying it to some one who would hold it for his benefit, or by selling it and putting the purchase price in his pocket or beyond the reach of the appellee. Having failed in his efforts to find any one who was willing to hold the property for his benefit, he determined, it seems, to find some one who would purchase the land, and pay all, or a large part, of the consideration down. Prior to his becoming involved in the affairs of Compton and Shannon, as far as the record shows, and during the preceding two or three years, he had been endeavoring to sell his land to the grantee and others. A short time before the conveyance in question was made, he renewed his offer to sell it to the grantee, who became the purchaser at the price of $4,000, all that it was worth. He paid one-half of the consideration down, and executed his two bonds for one thousand dollars each, payable, respectively, on or before November

6, 1887, and November 6, 1888, to the wife of the grantor, and a conveyance was made to him, which acknowledged the receipt of the whole purchase price.

A number of facts and circumstances are relied on to show that the grantee, if he had made such enquiry as it was his duty to make, would have discovered the fraudulent intent of the grantor in making the conveyance to him.

In considering what effect those facts and circumstances ought to have had upon the action of the grantee, it must be borne in mind that his grantor, aside from his endorsement for Compton and Shannon, was perfectly solvent, and that the record does not show that the grantee had notice of their failing condition, or that they were unable to pay their debts. On the contrary, he testified that he thought they were solvent, and could pay all their indebtedness, and there is no sufficient ground for doubting the truthfulness of his statement. It is true that there are some discrepancies in his evidence as to some of the details attending his purchase, yet they are not such as to seriously affect his testimony. When he was examined as a witness he was seventy years of age, and was testifying as to a transaction which took place twelve years before. His testimony shows that he was an illiterate man, yet it bears upon its face the impress of truth, and not only his own, but witnesses for the appellee also prove that his reputation for truth and veracity was unquestioned.

Among the material facts and circumstances relied on to show that the grantee would have discovered the fraudulent purpose of the grantor if he had made such enquiry, as it was his duty to make, was the pendency of the appellee's action at law upon the $2,700 note. This action was pending, and judgment was rendered on the note within a few days after the grantee purchased the land, but the record does not show that he knew of its pendency, and he testified that he had no such knowledge.

Another circumstance was making his bonds for the deferred purchase price payable to the grantor's wife. It appears from

the record that a large portion of the money used some years
before in removing encumbrances upon the land conveyed came
from·the wife's father during his lifetime, and from his estate
after his death; that it was charged to her in the distribution of
her father's estate; that she claimed, by reason of such payments,
an half interest in the land; and that the grantee knew of this
claim, and executed his bonds for the deferred purchase money
to the wife instead of to the husband by their direction.  Whilst
the wife had no interest in the proceeds of the sale of the land
on account of the money received from her father and his estate,
used in removing encumbrances upon the land, which she could
enforce against the husband or his creditors, still there was noth-
ing so unreasonable in her demand that half of the proceeds of
sale should be paid to her as to render the grantee guilty of cul-
pable negligence in not making further enquiry.

Another circumstance is the recital in the deed that the whole
purchase price had been paid, when only half of it had been.
The grantee testifies that in making the purchase he had no
counsel; that the deed was drawn by the attorney of the grantor,
whom, he thought, knew how to draw it; that the grantee had
never drawn a deed, and that, so far as he recollects, he did not
know that it was so drawn until the day he testified, when his
attention was called to it.  He was a man of means, fully able to
purchase the land, had given his bonds for the deferred purchase
price, and knew that they would be paid.  Under such circum-
stances, even if he had noticed the recital in the deed drawn by
a lawyer whom he thought knew his business, it is not likely that
it would have made much impression upon him.  Certainly not
such an impression as would fix upon him the imputation of bad
faith if he did not enquire why the recital was made under the
facts of this case.

Without discussing in detail the other suspicious circum-
stances connected with the grantee's purchase, it is sufficient to
say that, when all the circumstances relied on to show that the

grantee was guilty of bad faith in making his purchase without making further enquiry, are considered in the light of all the facts disclosed by the record, and especially of the facts that the grantee paid, and bound himself to pay, a full price for the property, and did not know that the makers of the note upon which his grantor was endorser were insolvent, but thought them fully able to pay their debts, the imputation of bad faith has not been fixed upon the grantee with that degree of strength and clearness which is required in making out a case of fraud.

We are therefore of opinion that the court erred in holding that the grantee was affected by the fraudulent intent of the grantor, and decreeing against him on that ground; but, as it appears from the record that, before the grantee had paid the purchase money bonds made payable to the grantor's wife, he had notice of the appellee's claim, and in a garnishee proceeding sued out by the appellee, answered that he still owed said bonds, and was willing to pay them to whomsoever the court might order; and as it further appears that no judgment was rendered against him in that case, and that all the parties in interest were before the court, it ought to have entered a decree against the grantee in favor of appellee for the amount of those bonds, with interest thereon from the time they became due and payable, and thus put an end to the controversy.

This court will reverse the decree complained of so far as it held that the appellant was affected by the fraud of the grantor and decreed against him on that ground for the amount of the appellees' judgment, and will enter such decree as the trial court ought to have entered, with costs to the appellant, as the party substantially prevailing.

*Reversed.*