# 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

## ANDERSON & MANESS v. MOSSY CREEK WOOLEN MILLS Co. AND OTHERS.

### June 19, 1902.

1. CHANCERY PRACTICE—*Multifariousness—Common Interests.*—Any number of creditors may unite in one suit to set aside a deed made in fraud of their rights, although their claims are distinct and separate.

2. FRAUDULENT CONVEYANCES—*Notice to Grantee.*—In order to charge a grantee with knowledge of the fraud of his grantor, it is sufficient to show that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally cause him to pause and enquire before consummating the transaction, and that such enquiry would have necessarily led to the discovery of the facts from which the law imputes fraud to the grantor.

3. APPEAL AND ERROR—*Record—Papers Not Before Trial Court.*—This court cannot consider papers that were not before the trial court at the time its decree was entered, and were filed with the papers of the cause, without authority, after the adjournment of the term at which the decree appealed from was entered.

'Appeal from a decree of the Circuit Court of Wise county, pronounced September 13, 1901, in a suit in chancery, wherein appellees were the complainants, and appellants and another were the defendants.

*Affirmed.*

The opinion states the case.

*C. T. Duncan* and *B. H. Sewell,* for the appellants.

*R. T. Irvine, Bullitt, Kelly & Hull* and *W. S Matthews*, for
the appellees.

HARRISON, J., delivered the opinion of the court.

The first ground of demurrer assigned by the petitioners to
the bill in this case is that no privity of interest is shown by the
bill to exist between the several parties suing as plaintiffs; that,
the account of each being separate and distinct from all the
others, each should have sued separately.

It appears that twenty-five or more creditors of one T. R.
Kyle, having separate and distinct claims, united in one chan-
cery suit, the chief object of which was to have set aside a sale
of a stock of merchandise made by their debtor Kyle to the ap-
pellants, and to have the goods sold to satisfy their claims, charg-
ing that the sale had been made by Kyle to hinder, delay and
defraud his creditors; and, in aid of the chief object of the bill,
asking that the goods might be attached in the hands of the ap-
pellants, upon the ground that Kyle had absconded with the
proceeds of sale beyond the borders of this State.

There was no error in overruling the demurrer upon this
ground. Under such circumstances, it is the proper practice for
any number of creditors to proceed in one suit. Section 2460
of the Code provides that where one creditor has brought such a
suit as this, other creditors, interested in having the fraudulent
transfer set aside, have a right to come into the same suit by
petition and secure the benefit thereof. If creditors can come
in one by one and make themselves parties plaintiff, it would
seem to follow necessarily that they could all join as parties
plaintiff in the original bill. Indeed, it is desirable that they
should do so, to avoid cost and a multiplicity of suits.

The second ground of demurrer is that the bill does not suffi-
ciently allege collusion between Kyle, the vendor, and the ap-
pellants.

This point is not well taken. The bill distinctly charges the

fraud in broad terms, and alleges that Anderson and Maness, the appellants, at the time they made the purchase, knew that Kyle was making the sale with intent to hinder, delay, and defraud his creditors.

It is abundantly established that the transaction was steeped in iniquity, so far as Kyle was concerned, but it is contended by the appellants that the fraudulent purpose of Kyle was not known to them, and they assign as error the action of the Circuit Court in holding that they had notice of the evil intent of their vendor.

It is rarely possible to establish by direct proof the fraudulent intent, in relation to creditors generally, which forms the substance of enquiry in all questions of fraudulent alienation. It is, therefore, not required that the actual purpose to defraud be shown by express proof. It may be supplied by just legal implication from the evidence, when the circumstances are such that the intent may be fairly inferred. It is sufficient to show that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and enquire before consummating the transaction, and that such enquiry would have necessarily led to the discovery of the facts from which the law imputes fraud to the grantor. *Ferguson* v. *Daughtrey*, 94 Va. 308; *Fischer* v. *Lee*, 98 Va. 163.

In the case under consideration, it appears that T. R. Kyle and the appellants had been well known to each other for a long time, in Lee county, where each was in business. In the latter part of the year 1900, Kyle left Lee county and went to Big Stone Gap, in Wise county, to establish himself in business. During the winter, from January 1, 1901, to the following March, he bought from numerous wholesale merchants a stock of general merchandise, costing about $5,700. About the 1st of March, before all of the goods had been unpacked, he

began to negotiate a sale of the entire stock to the appellants, who had come, at his instance, from Lee county to make the purchase. On the 6th day of March, the terms of the sale had been agreed upon.. The sale was in gross, at their own offer, namely, 66 2-3 cents in the dollar of the cost price, Kyle paying the freight charges, which was equivalent to a further deduction of three *per cent.* from the cost price. The purchase price was arrived at by taking the aggregate of the bills furnished Kyle by the wholesale merchants, deducting therefrom the cost price of the daily sales made by Kyle after he commenced selling, and further deducting the 33 1-3 *per cent.* discount agreed upon, leaving a balance of $3,296.76. From this balance was taken a bond of $800 due the appellants from the vendor's son-in-law, for which Kyle was bound as surety, leaving a balance of $2,496.76, which was to be paid in currency. This agreement was kept a secret; the clerk in the store, who was retained by appellants, being instructed by them to say nothing about the transaction before their return some days later from Lee county. On the 11th day of March, the appellants took possession of the store in person, paid, as agreed, the $2,496.76 in cash, and the following night Kyle left for the West, with the proceeds of sale in his pocket.

Looked at from the standpoint of dealings between men ordinarily, there is much in the character of this transaction that is unusual, and well calculated to suggest bad faith on the part of the appellants. It very clearly appears that when Kyle went to Big Stone Gap he could not have been worth, if anything, over thirteen or fourteen hundred dollars, and the evidence tends strongly to show that appellants must have been acquainted with his financial condition. They find him in possession of a new stock of merchandise that had cost nearly $6,000, and willing to sell it to them for two-thirds of its cost, taking in part payment a debt of $800 for which he was bound as surety. It was well calculated to cause appellants

surprise to find an honest man who had just started in business, before his goods were all opened, ready to accept their offer of two-thirds the price he had agreed to pay for them, without any adequate or satisfactory reason being given for such a sacrifice. Appellants say that Kyle told them he had practically paid for the goods. It appears, however, that they handled all the bills of the wholesale merchants during their negotiations, on the face of each of which it appeared that the purchase price of the goods was not then due. This fact should have, at least, suggested the enquiry whether he had paid for the goods before the bills were due.

The secrecy maintained about the sale from March 6 to March 11, when the money was paid and Kyle left, is a circumstance to be considered, as to which there is no satisfactory explanation. That the appellants should have bought such a large and promiscuous stock of goods, some of them not opened, without an inventory, and without any examination of them, is unusual, and a damaging circumstance.

It is a most unusual thing, in these days, for business-men, in a transaction of this character, to count out in settlement $2,496.76 in currency. This circumstance is the more significant and damaging when we consider that both Kyle and the appellants were merchants, kept bank accounts, and were in the habit of conducting their business through the banks as a medium of payment. The method of payment adopted looks very much as if it was resorted to for the purpose of facilitating Kyle's immediate departure for the West. If it was done at the instance of Kyle, it was sufficient to cause appellants to enquire why he desired such an unusual method of payment.

The evidence is voluminous, and there are a number of minor circumstances, which in connection with those mentioned, point to a lack of good faith on the part of the appellants, but it is not necessary to prolong this opinion with their recital. It is enough to say that upon a consideration of the whole record, we are

unable to hold that the Circuit Court has reached an erroneous conclusion.

Appellants contend that the Circuit Court erred in directing a sale of the goods for the reason that they had given bond and taken the goods back into their possession, and that the appellees should have proceeded upon the bond. Without pausing to point out the irregularity of the bond, and the lack of authority for its execution, we call attention to the fact that the bond in question is no part of the record of this case. It was not before the court at the time the decree complained of was entered, and was filed with the papers of the cause, without authority, after the adjournment of the term at which the decree appealed from was entered. It cannot, therefore, be considered by this court.

For these reasons the decree complained of must be affirmed.

*Affirmed.*