Syllabus.

# Wytheville.

COPPERTHITE V. LOUDOUN NATIONAL BANK AND OTHERS.

June 9, 1910.

Absent, Harrison, J.

1.  EVIDENCE—*Failure of Party to Testify—Presumption.*—Generally, when a defendant can by his own testimony throw light upon matters at issue necessary to his defense, and peculiarly within his own knowledge, if the fact exists, and fails to go upon the witness stand, the presumption is raised and will be given effect to, that the fact does not exist.

2.  FRAUDULENT CONVEYANCES—*Fraud of Grantor—Bona Fides of Grantee—Burden of Proof—Case in Judgment.*—Where a deed of trust to secure a debt is assailed as fraudulent, and the fraud of the grantor therein and of his grantor is so flagrant as not to be denied, and the evidence tends to show participation therein of the creditor secured, the burden is on him to show his good faith in the matter, and his ignorance of the misconduct of the grantors under and through whom he claims. In the case in judgment, while the creditor secured voluntarily furnished counsel for the complainants with a signed statement of his version of the transaction which was filed by them and is entitled to its natural effect, yet the fact remains that he did not deny under *oath* the grave charges against his character, and the *bona fides* of his conduct in the matter, nor make any effort to relieve the situation by proving his own general character, or that of his counsel who represented him, or of the trustees of his selection.

3.  FRAUD—*Notice—Means of Knowledge—Duty of Enquiry.*—Actual knowledge of fraud is not necessary in order to charge a party as a participator. In law, means of knowledge coupled with the duty of using them is tantamount to actual knowledge. A knowledge of facts sufficient to excite the suspicions of a prudent man and put him on enquiry, or to lead a person of ordinary perception to infer fraud, or the means of knowing by the

use of ordinary diligence, amounts to notice, and is equivalent to actual knowledge in contemplation of law. The nature and circumstances of the transaction may sometimes be such as must apprise the grantee in a deed of its character and object. If he has notice sufficient to put him on enquiry, he cannot be deemed a *bona fide* purchaser.

Appeal from a decree of the Circuit Court of Loudoun county. Decree for complainants. One of the defendants appeals.

*Affirmed.*

The opinion states the case.

*Moore, Barbour & Keith,* for the appellant.

*Cecil Connor* and *Edwin E. Garrett,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

On September 19, 1906, the appellees, who are creditors of Charles W. Jenkins, filed a bill in equity in the Circuit Court of Loudoun county against him and his son, Henry G. Jenkins, and Henry Copperthite, the appellant, and certain trustees, to set aside a deed of bargain and sale from Charles W. Jenkins to his son, by which deed, for the alleged consideration of $2,500, he conveyed away practically the whole of his personal property, consisting of live stock, farming implements, and an undivided interest in the wheat, corn, hay and other crops then growing on the farm of which he was tenant—property proved to be of the value of $5,000. The bill also sought to set aside a contemporaneous deed of trust by which Henry G. Jenkins conveyed the identical property to trustees to secure to Copperthite an alleged debt of $2,000, evidenced by note payable twelve months after date, with interest at six *per cent.* payable quarterly at the Farmers and Mechanics National Bank of Georgetown, D. C.

The bill alleges that Charles W. Jenkins was the lessee of a farm containing about 800 acres in Loudoun county, Virginia; that he was a man advanced in life, with a wife and large family of children, who resided with him on the rented farm, dependent upon him for support; that Henry G. Jenkins the eldest child, was twenty-two years of age and worked with and under the direction and control of his father; that he had accumulated nothing and owned no estate of any description; that the deed from the father to the son was without consideration and made for the purpose of hindering, delaying and defrauding the creditors of the grantor; and that the son participated in the transaction with full knowledge of its purpose; that if it should appear that the check of Copperthite for $2,000 was drawn payable to Henry G. Jenkins and indorsed by him to his father who got the money from the bank, the transaction was colorable merely, and that Charles W. Jenkins immediately placed the money either directly or indirectly under the control of Copperthite, his agent or trustee; that he paid no debts with the money, and if Copperthite parted with his cash, it was done to enable Charles W. Jenkins to convert his property into money, to hinder, delay and defraud his creditors; that the execution of the bill of sale and deed of trust were parts of the general scheme to enable Charles W. Jenkins to put his property beyond the reach of his creditors; that $2,500 was a grossly inadequate price for the property, and even if Copperthite actually paid the $2,000, the remaining $500 were never paid.

The bill prayed for an injunction and a receiver, and that the bill of sale and deed of trust be set aside as fraudulent, and the property sold and the proceeds applied to the payment of plaintiff's debts.

An injunction was granted accordingly and rules awarded against the defendants, returnable to the first day of the October term of the court, to show cause why a receiver should not be appointed as prayed for. At that term the two Jen-

kinses and Copperthite answered the bill, and the court appointed a receiver to take possession of the property. It transpired, however, that in the meantime Charles W. Jenkins and Henry G. Jenkins, in utter disregard of the injunction order, had succeeded in carrying off, to Washington city and elsewhere, and disposing of about four-fifths of the entire property. They also evaded process and escaped beyond the jurisdiction of the court, and are still fugitives from justice. When these facts became known to the court, it expunged their answers from the record and the bill as to them was taken for confessed.

After the case had been argued and submitted, the trustees filed a joint answer containing a general denial of any fraudulent purpose on their part, or to their knowledge, in connection with the execution of the deeds in question. Copperthite's answer likewise contains a negation of the charges of fraud, but the answer embodies no specific responsive averment that he is a *bona fide* purchaser for value and without notice. He states that he has no means of knowing of the correctness of the allegations of the bill in regard to the indebtedness of Charles W. Jenkins, or as to his farming operations, or the property owned by him, his business antecedents, his relations with his son and other members of the family, or the value of the personal property conveyed to the son, except that he considered it ample security for his debt. He further states that Henry G. Jenkins applied to him for a loan of $2,000, which he made, being satisfied with the security offered, and the trust deed was accordingly executed. He admits that Henry G. Jenkins paid him $1,000 on his indebtedness, which he represented as having been derived from the sale of some of the trust property.

In a subsequent written statement filed in the case by counsel for the appellees, he explains his connection with the transaction as follows: That he made the loan of $2,000 to Henry G. Jenkins on July 13. 1906, by check on the Farmers and Me-

chanics Bank of Georgetown, D. C.; that his object in making the loan was to get six *per cent.* on his money, and the loan was made on the faith of the property; that he had several times been up to Charles W. Jenkins' place hunting and knew Henry G. Jenkins and had seen the property; that young Jenkins applied to him for the loan about three days before it was effected, and he requested his Washington attorney, Miller, to prepare the papers to secure it.

Charles W. Jenkins was present when the mortgage was executed, and Copperthite knew at that time that the father was conveying his property to his son, and thought that he had the right to do so. He did not know until the date this statement was prepared that Jenkins and his son were residing in the city of Washington; nor did he know that any part of the farming implements had been sold by either of the parties, though his attorney, Miller, had informed him that the property was advertised for sale. On September 20, 1906, Henry G. Jenkins paid him $1,000 on his indebtedness in a single note of that denomination, which at his request was, by Copperthite's direction, indorsed by his attorney, Miller, as a credit on the note. At the date of this payment he had no occasion to employ counsel and had not given the matter of the loan any consideration as he thought it was safe at the time he made it. Neither Charles W. Jenkins nor his son had applied to him for leave to sell the property, and it was not his intention to force a sale. He did not deposit the $1,000 bill in bank, but had it changed into fractional currency for use.

It was proved that Copperthite was a man of considerable means, and that he gave his check for $2,000 to Henry G. Jenkins on the Farmers and Mechanics National Bank of Georgetown, D. C., which was indorsed by the latter to Charles W. Jenkins and paid to him over the counter of the bank in two notes for $1,000 each.

The circuit court held that the deed from Charles W. Jenkins to Henry G. Jenkins was not made for a *bona fide* and adequate consideration, and was fraudulent and void as to the plaintiff's debts, and that Copperthite before and at the time of the execution of the deed of trust for his benefit was chargeable with notice and had knowledge of the fraud of both Charles W. Jenkins and Henry G. Jenkins and participated therein, and that neither he nor his trustees were purchasers for value without notice. It was, therefore, decreed that both deeds were null and void as to the debts of the plaintiffs.

The fraud in this transaction, so far as Charles W. Jenkins and Henry G. Jenkins are concerned, is so flagrant that it is not and cannot be denied, and it is only necessary to consider that branch of the case as tending to affect Copperthite with notice of the fraud which invalidated the title of his immediate grantor.

Generally, "When a defendant can, by his own testimony, thrown light upon matters at issue necessary to his defense and peculiarly within his own knowledge if the fact exists, and fails to go upon the witness stand, the presumption is raised and will be given effect to, that the facts do not exist." *Bastrop St. Bank* v. *Levy*, 106 La. 586, 31 South. 164; *Aragon Coffee Co.* v. *Rogers*, 105 Va. 51, 52 S. E. 843.

It is true the force of this implication, with respect to the failure of Copperthite to testify, is to some extent weakened by the circumstance that he voluntarily furnished counsel for the appellees with a signed statement of his version of the transaction, which was filed by them in the case and was thus entitled to its natural probative effect. *Wilkinson* v. *Jett*, 7 Leigh, 115, 30 Am. Dec. 493; *Hubbard* v. *Allyn*, 200 Mass. 166, 86 N. E. 356; *Daman* v. *Carrol*, 163 Mass. 404, 40 N. E. 185. Nevertheless the fact remains, that the record contains no denial *under oath* by Copperthite of any of the grave charges affecting his character and the *bona fides*

of his conduct in this regard. Nor has any effort been made to relieve the situation by proving his general character and standing in the community in which he lives, or that of his attorney, Miller, or of the trustees of his own selection, one of whom was so illiterate that he made his mark in lieu of signature to the deed of trust. It was by the instrumentality of these parties alone that the perpetration of this fraud was made possible, and it was incumbent upon them to repel the unfavorable inferences to be drawn from the incriminating circumstances surrounding the transaction by showing their good faith and ignorance of the misconduct of Charles W. Jenkins and his son.

There is no *direct evidence* that Copperthite had positive knowledge of the intent of the elder Jenkins to delay, hinder or defraud his creditors, or of the fraud rendering void the title of his grantor, nor is such actual knowledge necessary. In law, means of knowledge and the duty of using such means is tantamount to actual knowledge. The rule in this State is well settled, that, "A knowledge of facts sufficient to excite the suspicions of a prudent man and put him on the inquiry, or to lead a person of ordinary perception to infer fraud, or the means of knowing by the use of ordinary diligence, amounts to notice, and is equivalent to actual knowledge in contemplation of law. The nature and circumstances of the transaction may sometimes be such as must apprise the grantee of its character and object.—*Res ipsa loquitur.*—If he has notice sufficient to put him on the inquiry, he cannot be deemed a *bona fide* purchaser."

This statement of the principle in Bump on Fraud. Con. (4th ed.), sec. 184, is quoted with approval by Riely, J., in delivering the opinion of this court in *Ferguson* v. *Daughtrey,* 94 Va. 308, 312, 26 S. E. 822. See also *Hickman* v. *Trout,* 83 Va. 478, 3 S. E. 131; *American* v. *Mayo,* 97 Va. 182, 33 S. E. 523; *Fischer* v. *Lee,* 98 Va. 159, 35 S. E. 441; *Newberry* v. *Bank,* 98 Va. 471, 36 S. E. 515: *Anderson* v. *Mossy Creek, &c.,*

*Co.,* 100 Va. 420, 41 S. E. 854; *University* v. *Snyder,* 100 Va. 567, 42 S. E. 337; *Flook* v. *Armentrout,* 100 Va. 638, 42 S. E. 686. For other Virginia cases on the subject of fraudulent conveyances, see monographic note to *Cochran* v. *Paris,* 11 Gratt. 348, Va. R. Ann. 149.

The following are some of the significant circumstances tending to arouse suspicion in a man of ordinary prudence and to put him on inquiry as to the *bona fides* of the transaction between Jenkins and his son, to which we invite attention: The father was a man advanced in life with a large family dependent upon him for support; and, without explanation sought or given, in the midst of the crop year he deprives himself of the means of fulfilling his contract with his landlord by an absolute sale of nearly all his property, including his interest in the growing crops, to an inexperienced and impecunious son, who had but recently attained his majority, for about one-half its value. Jenkins and his family, including his son, Henry, lived in Loudoun county, Virginia. Copperthite, his attorney, Miller, and the two trustees were residents of the city of Washington. The business was transacted in that city, the deed of bargain and sale and the deed of trust were both prepared by Copperthite's counsel, and he was fully apprised of the source of the son's title, the perfection of which, even between the parties, depended wholly upon him. The property, which was perishable in its nature, was not present for inspection, but was in a foreign jurisdiction many miles distant. There was no delivery of the possession of the property by the father to the son—indeed, the latter had no use for the property, no provision for the sustenance of the live strock, and no place in which to bestow it. Copperthite was acting under the advice of counsel, and knew that property on leased premises was liable to the landlord for rent. Yet he made no inquiry of the landlord concerning the rent, or as to what share of the growing crops the tenant was entitled. He knew that the property was

liable to be incumbered by other liens, which the records in the clerk's office of Loudoun county would disclose, but made no examination of that office, though dealing with a comparative stranger, who lived in a foreign jurisdiction. He made no specific denial in his answer of the allegation that the $2,000 gotten on his check was placed under the control of himself, his agent or trustees, and, as before observed, that sum was paid by the bank in two bills of the denomination of $1,000 each. It was shown that the day after the bill was filed the son paid Copperthite a $1,000 note, which was claimed to be the proceeds of sale of part of the property included in the trust deed. It is probably not an unusual circumstance that a city bank should have paid Copperthite's check in notes of the denomination of $1,000 but it is highly improbable that Henry G. Jenkins should have received a $1,000 bill from the indiscriminate sale of personalty of the character included in the trust deed. In this connection, also, it may be remarked that Copperthite's explanation of his motive in becoming a party to the transaction was to effect a twelve month's loan of $2,000 at six *per cent.* Yet we find him collecting one-half of the debt *ten months* before it was due and *one day* after the bill was filed, in a single note of $1,000.

In view of all the circumstances, we are of opinion that the circuit court was warranted in reaching the conclusion that the appellant, Henry Copperthite, was not a purchaser of the property in controversy for value and without notice of the fraud rendering void the title of his immediate grantor.

The decree appealed from must, therefore, be affirmed.

*Affirmed.*