# Richmond

J. C. SADLER v. W. W. MARSDEN AND H. W. MARSDEN.

March 16, 1933.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*W. W. Minter* and *George P. DeHardit,* for the appellant.

*C. S. Smith, Jr.,* and *Gilbert L. Diggs,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellant, who was the complainant in the court below, instituted a chancery suit against W. W. Marsden and H. W. Marsden, the purpose of which was to establish the amount due upon a note of $1,000, and to enforce a deed of trust which secured said note, by selling a certain parcel of land for the satisfaction of the debt. The defendants demurred to the bill and amended bills, but the demurrer was overruled. They then filed a short joint answer in which all of the allegations in the bills were denied. Evidence was taken and the cause heard upon the merits. The trial court denied the prayer of the bills and dismissed them by a decree of August 26, 1931.

There is no conflict in the material facts which are as follows: On October 1, 1907, J. J. Burke and wife and L. C. Garnett and wife being the former owners of the tract of land now in controversy, executed their note for $1,000, payable to the L. E. Mumford Banking Company, six months after date, and a deed of trust upon the land to secure the payment of the note. The note matured on April 1, 1908. On February 12, 1912, Burke and wife and Gar-

nett and wife conveyed the land to W. W. Marsden, a resident then and at all times since of Baltimore, Maryland, for the consideration of $1,000, which was paid by Marsden by his assumption in the deed of the $1,000 due by the grantors to the L. E. Mumford Banking Company, and evidenced by the note. H. W. Marsden, a brother of W. W. Marsden, immediately took possession of the land, lived thereon, and exercised all of the acts of control and ownership over it from 1912 to the present time and he actually paid the interest on the note until 1927 or 1928. Some time later in 1912 after H. W. Marsden had taken control of the land and was living thereon, he requested his neighbor, J. E. Sadler, to purchase the note which was held by the L. E. Mumford Banking Company, because the banking company was threatening to foreclose the deed of trust to satisfy the note of $1,000. He told Sadler that if he (Sadler) did not buy the note, he (Marsden) with his family would be deprived of their home and that they would have no other place to make a new home. Responding to these entreaties, and in order to save the home for W. W. Marsden and his family, Sadler did purchase the note, paying the banking company the full face value of it. At the time of the purchase of the note Sadler knew that the title to the property stood in the name of W. W. Marsden. In August 1927, Sadler realizing that the deed of trust would be barred by the twenty year statute of limitation, in a short time, called upon H. W. Marsden, requesting him to either pay the note or to have his brother renew it and execute a new deed of trust upon the land securing the payment of the renewal, whereupon H. W. Marsden requested Sadler to deliver the note to him (Marsden), at the same time representing to Sadler, that he would have his brother, W. W. Marsden, execute a new note and a new deed of trust securing it. Sadler, having confidence in H. W. Marsden and believing that he was acting in good faith, did deliver to him (H. W. Marsden) the $1,000 note for the purposes just stated. On many occasions afterwards Sadler called upon H. W. Marsden for the re-

newal note and the new deed of trust, and each time Marsden promised to attend to the matter and assured Sadler that the new note and the deed of trust would be executed and that he need have no fear of losing the $1,000. Relying upon these assurances, Sadler did not attempt to collect the amount of the note by foreclosing the deed of trust before the twenty year statute of limitation had barred his right to foreclose. The twenty year statute barred the right to foreclosure on April 1, 1928, and even after that time Marsden was still promising to obtain a renewal note and new deed of trust for Sadler. In September, 1928, H. W. Marsden brought Sadler a letter from his brother, W. W. Marsden bearing date of September 6, 1928, in which W. W. Marsden declined to renew the note. The letter is as follows: "Harry, your note and request to endorse it received, which I positively refuse to do. My advice to you is to get a purchaser and sell the place, and pay Mr. Sadler in full. Yours &c., W. W. Marsden." Even after this letter had been delivered to Sadler, he continued to believe that he would be protected until sometime in 1930, when he learned that H. W. Marsden did not intend to comply with his promise and that he had burned the note a short time after it had been delivered to him. By deed bearing date August 18, 1928, acknowledged September 13, 1928 and recorded April 14, 1930, W. W. Marsden conveyed the land to H. W. Marsden and his wife, Ella M. Marsden, for the consideration recited therein of $1,000 in cash, but the evidence conclusively shows that the real consideration was the transfer by H. W. Marsden to his brother, W. W. Marsden, his interest in his mother's estate which was estimated to be of the value of $1,000. The evidence also conclusively shows that the land was worth at the time, $5,000. This deed was made just a short time after the bar of the statute of limitation. It is also shown by the evidence, and not denied by either defendant, that H. W. Marsden had inquired of the clerk of the court about the time he was making his assurances to Sadler, as to when the deed of trust would be

barred by the statute of limitation and the clerk told him it would be barred in twenty years. Again in 1929, a year after the deed from W. W. Marsden, H. W. Marsden inquired of the clerk whether Sadler had instituted his suit, and at that time exhibited to the clerk his deed from W. W. Marsden and upon being informed by the clerk that Sadler had instituted suit, he withheld the deed from recordation until 1930. Certain admissions made by H. W. Marsden are clearly shown, and not denied by him, though he testified as a witness in his own behalf. He admitted to the clerk that he had burned the note he had obtained from Sadler. He also admitted to witness Reynolds that he had burned the note; that he, H. W. Marsden, was the real owner of the property, though the title stood in his brother's name and that he had placed the title in the brother's name to prevent his (H. W. Marsden's) creditors from selling it for his debts. He also admitted to Mrs. Reynolds that the property in fact belonged to him and that he had placed the title in his brother's name to prevent it being sold for his debts.

After the original bill had been filed the facts last above stated came to the knowledge of counsel for the appellant and he filed two amended or supplemental bills of complaint in which the new matter was alleged and it was further alleged that while the title to the property was in the name of W. W. Marsden it in fact belonged to H. W. Marsden and that W. W. Marsden never at any time had any interest in it. It was also alleged that through the fraud of the defendants, Sadler had been prevented from foreclosing the deed of trust until after it was barred by the twenty year statute of limitation. The joint answer of H. W. and W. W. Marsden was filed after the amended and supplemental bills had been filed.

On motion of counsel for complainant, it was sought to make Mrs. Ella M. Marsden, wife of H. W. Marsden and one of the grantees in the deed from W. W. Marsden, a party defendant to the suit but the trial court by its decree, over-

ruled the motion, on the ground that she was not a necessary party at the time, but if it became apparent that she was a necessary party later on, leave would be granted to implead her. The trial court also decided by the same decree that the complainant, Sadler, was not entitled to the relief sought because the statute of limitation applicable to deeds of trusts applied in this case and constituted a bar to the enforcement of the deed of trust here involved, and the bill and amended and supplemental bills were dismissed. This decree is brought under review by the appeal allowed in this cause.

The appellant contends that the decree is erroneous and that he is entitled to have the deed of trust enforced to satisfy his debt. He contends that H. W. Marsden was and is the true owner of the property; that he bought it and had the title placed in his brother's name for the sole purpose of defeating his creditors who had claims against him at the time the title was placed in the name of W. W. Marsden and that if this be true, H. W. Marsden is now estopped by his own fraud to plead the statute of limitations to the deed of trust. He further contends that if W. W. Marsden was the true owner, he was guilty of such fraud that he too would be estopped to plead the statute of limitation against the deed of trust.

No formal plea of the statute of limitation was filed in the cause. It was raised by the demurrer which we have seen was overruled. It was not raised in the joint answer which was very brief. We think it pertinent to quote it at length. It is as follows: "For answer to the plaintiff's bill the defendants, W. W. Marsden and H. W. Marsden, deny each and every allegation in the bill filed in this cause except those referring to matters of record in the clerk's office of Mathews county. W. W. Marsden and H. W. Marsden."

The defendants contended that the statute of limitation (Code, section 5827) barred the enforcement of the deed of trust; that W. W. Marsden was the true owner of the property; that when the statute barred the deed of trust, W. W. Marsden owned the property free of any lien and being the

owner, he had the right to sell it to his brother, H. W. Marsden and that H. W. Marsden never having legally obligated himself in any way to pay the Sadler debt, he is now the true owner under the deed from his brother.

The material facts have been stated and they are supported by the uncontradicted evidence which was introduced. H. W. Marsden, when testifying in the cause, did not deny a single allegation contained in the bills and he did not deny that he had admitted to witnesses that he had burned the note. He did not deny that he had on several occasions declared to witnesses that he was the real owner of the property and that he had stated to witnesses that he had bought the property and placed the title to it in his brother's name in order to defeat his own creditors who had valid claims against him at that time. He testified that he had bought the property from his brother, W. W. Marsden, and had turned over to him his (H. W. Marsden's) interest in his mother's estate, valued at about $1,000 in payment for it and that the property was worth around $5,000.

W. W. Marsden, who is personally before the court by reason of the answer he filed in the cause failed to testify.

Adverting to the inception of the transaction, the record does not disclose any of the circumstances surrounding the delivery of the deed to W. W. Marsden by Burke and Garnett. These circumstances might have shed light upon the transaction and were peculiarly within the knowledge of W. W. Marsden but he has preferred not to testify in the cause. If W. W. Marsden was the true owner he has failed to explain why he permitted his brother H. W. Marsden to exercise all of the acts of control and ownership over the property, paying the taxes and interest and using and enjoying the property presumably without paying rent for some sixteen years.

Unless W. W. Marsden and H. W. Marsden are estopped by their own fraud to plead the twenty year statute of limitation as a bar to the enforcement of the deed of trust, it is clearly unenforcible and the decree of the lower court

would be correct. On the other hand if they have been guilty of such fraud as would have naturally prevented the appellant from enforcing the deed of trust before it was barred, they would be estopped to take advantage of the statute.

The fraud of H. W. Marsden has been clearly proven. The evidence conclusively shows that he, by his false promises and representations made to the appellant with the intent to deceive him, induced him to delay action with the result that appellant lost his right to enforce the deed of trust, which no doubt he would have enforced to collect his debt, within the statutory period, had he not been misled and prevented from so doing by the said promises and representations.

Counsel for the defendants in their brief concede that fraud will repel the bar of the statute of limitation, for they say "* * * the twenty year limitation is an absolute bar unless extended in the manner provided in this section (*Cohen* v. *Jenkins* above), or unless repelled by fraud which is properly alleged and proved by clear, positive, cogent and convincing evidence * * *." In addition to this, the law seems to be well settled that where a debtor, by his fraudulent acts and representations, has misled the creditor and induced him to refrain from instituting proceedings to protect his rights, until after the bar of the statute has fallen, the debtor is estopped to plead the statute of limitations as a defense. In 17 R. C. L. page 884, this is said:

"A debtor has frequently been held to be estopped from relying on the statute as a defense where, by acts of a fraudulent character, he has misled the creditor and induced him to refrain from bringing suit within the statutory period. And if a defendant intentionally or negligently misleads a plaintiff by his misrepresentations, and causes him to delay suing until the statutory bar has fallen, the defendant will be estopped from pleading the statute of limitations. And the prevailing view seems to be that the doctrine of estoppel applies where the creditor, before the debt is barred, is

lulled into security by the oral promise of the debtor that he will not avail himself of the statute of limitations, and suit is delayed by reason thereof. It is not necessary that the debtor should intend to mislead, but, if his declarations are such as are calculated to mislead the creditor, who acts upon them in good faith, an estoppel will be created. * * * Again, an estoppel has been held to apply where a party was prevented from taking action, within the time prescribed by the statute, by reason of representations made to him of existing facts, within the knowledge of the party making them, and of which the party relying thereon was ignorant."

See, also, 37 C. J., page 725, and *Culpeper Natl. Bank* v. *Tidewater Improvement Co.*, 119 Va. 73, 89 S. E. 118.

Of course, we do not intend by what is here said to hold that an oral promise will remove the bar of the statute of limitations.

Our conclusion is that H. W. Marsden, by his own fraud, has precluded and estopped himself from relying upon the statute of limitations as a defense in this cause, and if he were and is the real owner of the property and W. W. Marsden had no interest in it, the deed of trust is still a lien and the property could be sold to satisfy it.

If W. W. Marsden were the real owner, is he estopped to rely upon the statute of limitations by reason of the fraud of H. W. Marsden, his brother? In other words, did W. W. Marsden participate in the fraud which his brother committed?

The record discloses circumstances which strongly tend to incriminate W. W. Marsden. He knew that the title to the property was in his name because he made a conveyance of it; he knew that the deed of trust in question was a lien upon the property, because he assumed the payment of the debt secured thereby; he knew that Sadler held the note, because his letter shows that he refused to endorse a renewal; he knew that the deed of trust would soon be barred because the records of the clerk's office disclosed this fact; he knew that his brother was living on the land,

controlling and exercising all of the acts of ownership over it for some sixteen years, paying the taxes and the interest on the note to Sadler, receiving the rents and profits and generally operating it as his own; he knew that he was conveying the land to his brother for a grossly inadequate consideration, namely, $1,000 when it was worth $5,000 and he has received the benefit of H. W. Marsden's fraud by receiving $1,000 for the property when in fact he paid nothing for it except to give his promise to assume a $1,000 indebtedness which he never paid and which became unenforcible by reason of the false promises of H. W. Marsden.

So far as the record discloses, W. W. Marsden was never in Mathews county and has never seen the property. It would be highly improbable that any person would buy a tract of land without first informing himself about its value and the purposes for which it might be used and this is usually accomplished by a personal inspection and view of the premises. In addition to the circumstances narrated, W. W. Marsden, though personally before the court by his general appearance and the filing of an answer, knowing full well that the appellant had charged him with fraud, failed to testify in the cause or deny the fraudulent allegations other than the general denial contained in his brief answer.

All of these circumstances tend strongly to show that W. W. Marsden was a party to the fraud. They are certainly sufficient, in so far as the peculiar facts of this case are concerned, to establish a *prima facie* case of fraud against him, which ordinarily would require him to show his good faith in the transaction. From the circumstances, several distinct badges of fraud appear and for them to go unchallenged by him leads one to believe that he and his brother were guilty of a fraudulent conspiracy, by which the appellant was defrauded of $1,000. The final result of it all, if the appellant is not permitted to enforce the deed of trust, is that W. W. Marsden has obtained a $1,000 interest in his mother's estate without cost to him; H. W. Marsden has

obtained property of the value of $5,000 for a consideration of $1,000, and the appellant has lost the $1,000 which was justly due him. A court of equity, in the exercise of its jurisdiction will not permit such a wrong to be perpetrated where the rights of third parties have not intervened.

The court is not unmindful of the rule which requires one who alleges fraud to affirmatively prove it by clear, strong and convincing evidence. It is not intended by what is said in this opinion to change or modify that rule in any respect, but when the evidence in a case involving charges of fraud clearly shows a number of badges of fraud, such as those shown under the peculiar facts and circumstances of this case, which are sufficient when unexplained, to make a *prima facie* case of fraud, if the defendant fails to prove his good faith in the transaction, it will ordinarily be set aside. If the creditors of H. W. Marsden had instituted suit against W. W. Marsden to set aside the deed made conveying the property to him, on account of fraud, and such circumstances as appear here had been shown in such a suit, and Marsden had failed to prove his good faith in the transaction, or failed to explain the incriminating circumstances, there could be no doubt that a court of equity would have set it aside.

This court held in *Hickman's Ex'r* v. *Trout*, 83 Va. 478, 3 S. E. 131, 136, that "Certain circumstances are often referred to as *indicia* of fraud, because they are usually found in cases where fraud exists. Even a single one of them may be sufficient to stamp the transaction as fraudulent. When several are found in the same transaction, strong and clear evidence will be required of the upholder of the transaction to repel the conclusion of fraudulent intent."

See also *Lipman* v. *Norman Packing Co., Inc.*, 146 Va. 461, 131 S. E. 797, where the same principle is applied.

No doubt, many pertinent facts and circumstances, which would have shed much light upon the transaction

here involved, could have been disclosed by W. W. Marsden and his brother H. W. Marsden, if they were innocent of any fraud. Neither of them has availed himself of the opportunity afforded to deny the allegations of the fraud charged against them. They have remained silent, in the face of grave charges, when men of common honesty, under such circumstances, would have sought the opportunity to deny such charges, if they were false. When a defendant can, by his own testimony, throw light upon matters at issue which are essential to his defense, and peculiarly within his own knowledge, and fails to testify and give an explanation regarding them, there is a presumption that his testimony, if given, would be adverse to him. *Copperthite* v. *Loudoun Nat. Bank*, 111 Va. 70, 68 S. E. 392.

Our conclusion is that the defendants, W. W. Marsden and H. W. Marsden are precluded and estopped by their own fraud from relying upon the statute of limitation contained in Code, section 5827, as a bar to the enforcement of the deed of trust sought to be enforced in the bills of complaint filed in this case. We are of the opinion that the trial court erred when it refused to implead Mrs. Ella M. Marsden as a party defendant. Of course, her rights in the premises, if any she has, cannot be adjudicated at this time. The cause will be remanded to the circuit court with the direction that she be made a party defendant and given an opportunity to establish her rights, if any, in the subject matter of this suit. If she succeeds in establishing any rights or interest in the property, then only the interest therein of W. W. Marsden and H. W. Marsden may be sold under the deed of trust to satisfy the debt due the appellant, but if she fails to establish any interest in the property, the entire property may be sold for the purpose of satisfying the appellant's debt.

*Reversed and remanded.*