# Wytheville.

TURNER'S ADMINISTRATOR v. CITIZENS BANK OF NORFOLK AND OTHERS.

June 9, 1910.

Absent, Harrison, J.

1. SUBROGATION—*Void Judicial Sale—Election to Take Land—Alienation—Right of Alienees to Purchase Money.*—Where a contingent remainder in land has been sold under a void decree, and the proceeds deposited in court for future disposition, and the devisee of the purchaser has aliened a large ·part of the land to various persons, upon the vesting of the remainder, the remainderman may elect to receive the sum so deposited and thereby accept the void decree and estop him from asserting any claim to the land, or he may decline to accept the fund and elect to take the land in specie. The effect of the former course would enure to the benefit of the alienees, and confirm their title to the land. The effect of the latter would oust the alienees of their title to the land, and entitle them to be subrogated to the rights of the remainderman in the fund deposited as aforesaid.

2. SUBROGATION—*Nature of.*—Subrogation is a creature of equity, and essential justice is its object. It does not flow from any fixed rule of law, but rather from principles of justice, equity and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.

3. EQUITY—*Jurisdiction of Parties and Subject Matter—Complete Relief.*—A court of equity, with all parties before it, and having control of a fund the ultimate destination of which is plainly in sight, will decree the fund to the parties ultimately entitled thereto, and will not relinquish the administration of the fund on the theory that it is an asset of an estate to the administra-

tion of which a personal representative before the court is exclusively entitled.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for defendants. Complainant appeals.

*Affirmed.*

This case is the sequel to the cases of *Turner* v. *Barraud*, 102 Va. 324, 46 S. E. 318, and *Suburban Company* v. *Turner*, 105 Va. 456, 54 S. E. 29.

We cannot present the facts which led up to the present case better than by adopting the statement of this court in the last-named case. That statement is as follows:

"In the year 1867 D. C. Barraud, Sr., died in the city of Norfolk, leaving a will by which, among other things, he gave to his grandson, D. C. Barraud, Jr., a life estate in a farm containing one hundred acres, known as 'Barron's,' with remainder to his lawful issue, if he should die leaving any, and if he should die without such issue, then the remainder was to pass, under the residuary clause of the will, to the persons named therein.

"Upon the death of the testator, the life tenant took possession of the 'Barron's' farm, and subsequently incumbered his estate by deeds of trust and judgments.

"In the year 1874, D. C. Barraud, Jr., and others, united as complainants in a chancery suit against R. C. Marshall and others. The object of the suit, as stated in the bill, was 'to construe the said will; to fix and determine the rights and interests of the various parties interested therein; to protect and provide for the annuities and to make partition in kind of the real estate so devised by the said D. C. Barraud, deceased, to and among the parties entitled thereto, according to their respective shares and interests, so that the part or share of your orator, the said D. C. Barraud. therein may be set apart in kind, if practicable and so far as practicable, and sold for

the benefit of the creditors under the said deeds of trust and judgment creditors aforesaid.'

"In the year 1875 a decree was entered directing the sale of the 'Barron's' farm, remainder as well as the life estate. In the year 1878 a consent decree was entered confirming a private sale of the farm to William H. Turner. This decree also ascertained the remainder interest in the proceeds of that sale to be $1,150.10, and directed it to be deposited in the Citizens Bank of Norfolk, bearing compound interest, to await the death of the life tenant; and at the same term of the court a final decree was entered striking the case from the docket.

"In the year 1885 William H. Turner, the purchaser at the sale mentioned, died, leaving a will by which he devised the 'Barron's' farm to his son, Henry L. Turner, during his life, and the remainder in fee to his grandson, William H. Turner, Jr. In the year 1891 the said Henry L. Turner and William H. Turner, Jr., conveyed to the North East Norfolk Land Company the whole of the 'Barron's' farm, with covenants of general warranty, but in the year 1894 the said land company re-conveyed to Henry L. Turner for life and the remainder in fee to William H. Turner, Jr., about thirty acres of the said farm. The residue of the 'Barron's' farm, about seventy acres, is now owned by, or is subject to the liens of the appellants, except the Citizens Bank of Norfolk.

"In the year 1901 Henry L. Turner, the life tenant of the thirty acres of the 'Barron's,' farm, and the heirs of the remainderman, William H. Turner, Jr., deceased, instituted a suit against the children of D. C. Barraud, Jr., to remove a cloud upon the title to the said thirty acres of land growing out of the claim of the children of the said D. C. Barraud, Jr., that they were not parties to nor bound by the decrees entered in the cause of *Barraud, &c.,* v. *Marshall, &c.,* heretofore referred to. Upon a hearing of the said cause of *Turner, &c., v. Barraud, &c.,* the Circuit Court of the city of Norfolk held that the action of the court in selling the remainder in-

terest of the children of D. C. Barraud in the 'Barron's' farm was not binding upon them, and that the decrees and other proceedings in the cause of *Barraud, &c.,* v. *Marshall, &c.,* so far as they affect the rights of the said children in and to the land in controversy were null and void. Upon appeal that action of the circuit court was affirmed. The history of the case and the reasons for this court's decision are fully set out in the opinion of the court in the report of the case, which is found in 102 Va. 324-388, 46 S. E., 318.

"After the affirmance of the decree appealed from in that case, the personal representative of William H. Turner, deceased, (the purchaser of the 'Barron's' farm in the case of *Barraud, &c.,* v. *Marshall, &c.*), instituted his suit in the circuit court against the Citizens Bank of the city of Norfolk and others, to compel that bank to pay or turn over to him the said sum of $1,150.10 (and its interest), deposited with that bank under decree of the court in the case of *Barraud, &c.,* v. *Marshall, &c.,* as above stated."

The plaintiff rested his right of recovery of the money in bank upon the allegation that his testator only acquired an estate in the "Barron's" farm for the life of D. C. Barraud, Jr., by virtue of decrees in *Barraud* v. *Marshall*, and that a trust arose to refund to him the fund on deposit (the purchase price of the remainder interest in the "Barron's" farm), the right to which on the death of Turner devolved upon him as personal representative.

The circuit court granted the relief prayed for in the bill, but upon appeal the decree was reversed. The court at page 461 of 105 Va., page 30 of 54 S. E. observes: "Treating however, the sale of the remainder in the 'Barron's' farm in the case of *Barraud* v. *Marshall* as a nullity so far as it affected the rights of the issue of D. C. Barraud, Jr., it does not follow that it was a nullity as to the heirs of D. C. Barraud, Sr. They were parties to that suit and consented to the decree which confirmed the sale of the

'Barron's' farm, which included the remainder as well as the life estate. This being so, they would not be heard to object that the sale as to them was not valid and binding, and upon the death of D. C. Barraud, Jr., without issue, as it is possible, the heirs of D. C. Barraud, Sr., would be entitled to the fund deposited in the Citizens Bank, and the title to the remainder interest in the 'Barron's' farm would be perfected in those who have acquired the rights of William H. Turner, Sr., the purchaser in the case of *Barraud* v. *Turner*."

Consequently, the court held that the fund in bank could not be properly disposed of until after the death of D. C. Barraud, Jr., and the bill was accordingly dismissed, but without prejudice.

*James E. Heath*, for the appellant.

*Wm. W. Old & Son, Jeffries, Wolcott, Wolcott & Lankford, Garnett & Garnett, W. L. Williams, Cutchins & Cutchings,* and *John B. Jenkins,* for the appellees.

WHITTLE, J., (after making the foregoing statement of the case) delivered the opinion of the court.

D. C. Barraud, Jr., died in the year 1908, leaving "lawful issue" surviving him; whereupon the personal representatives of William H. Turner, Sr., filed another bill in the Circuit Court of the city of Norfolk to recover the money deposited in the Citizens Bank under the decree in the case of *Barraud* v. *Marshall* (which we shall hereafter designate as the "court fund"), as an asset belonging to the estate of his testator. All parties in interest were convened in that suit, and the children of D. C. Barraud, Jr., having disclaimed and renounced all interest in the court fund, the circuit court, upon the pleadings and an agreed statement of facts, passed the decree under review, denying the prayer of the bill; and, after

deducting certain costs, attorneys' fees and taxes, awarded the court fund to the parties in possession of the "Barron's" farm (at the time of the death of the life tenant, D. C. Barraud, Jr.), as alienees of devisees of William H. Turner, Sr., deceased, in proportion to their respective holdings.

By the terms of the certificate, the court fund was deposited to the credit of the suit of *Barraud* v. *Marshall,* for the benefit of such persons as might be entitled to the same under the will of the testator, D. C. Barraud, Sr., and the children (the "lawful issue") of D. C. Barraud, Jr., having survived their father, became entitled to the fund, provided they should elect to receive it.

On the death of D. C. Barraud, Jr., either one of the two courses was open to the children: They could have elected to receive the court fund, which would have been an acceptance of the benefit of the void decree in the original suit, under which their remainder interest was sold, and estopped them from asserting any claim to the land; or they could have declined to accept the court fund, and have elected to take the land in specie. The effect of the former course would have inured to the benefit of the appellees, and confirmed their title to the land; the effect of the latter was to oust the appellees of their title to the land, and as the learned circuit court held, entitled them to be subrogated to the rights of the children to the court fund.

The concrete question, therefore, for our determination is, whether the devisee of William H. Turner, Sr. (or rather their alienees), who have been disappointed of what they would otherwise have been entitled to retain (the land devised) by the election of the Barraud children to take land instead of the court fund (the purchase price of the land), are entitled in equity to resort to the court fund to make good the benefits intended to be bestowed upon them by the testator's will.

The general doctrine of subrogation and the kindred prin-

ciples of substitution, compensation and election, have repeatedly received consideration at the hands of this court, and in no jurisdiction has that doctrine been more liberally applied to meet the exigencies of particular cases than in this State.

In a note to *Dering* v. *Earl of Winchelsea*, 1 L. C. in Eq., Pt. 1, 140, it was said, that in *Powell* v. *White*, 11 Leigh 309, "the Virginia practice was vindicated against the authority of Lord Eldon, with distinguished and convincing ability."

In *Enders* v. *Brune*, 4 Rand. 438, Judge Carr observes: "But the doctrine of substitution is governed by principles wholly different. It has nothing of *form*, nothing of *technicality*, about it; and he who in administering it would 'stick in the letter,' forgets the end of its creation, and perverts the spirit which gave it birth. It is the creature of equity, and *real essential* justice is its object."

In *American Bonding Co.* v. *National Mechanics Bank of Baltimore*, 99 Am. St. Rep. 466, Judge Freeman in note, p. 478, says: "Legal subrogation is not founded upon contract or privity or strict suretyship. It is born of equity, and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it."

It is a very ancient maxim of the law, that "He who bears the burden ought also to derive the benefit." Broom's Max.. 712.

In Sheldon on Subrogation (2nd ed.), the learned author at section 35, says: "The purchaser from a devisee whose purchase-money has been applied in payment of debts of the testator will be subrogated to the rights of the creditors whose demands he has thus satisfied." *Gibson* v. *McCormick*, 10 Gill

& J. (Md.) 65. See also Judge Freeman's note to *American Bonding Co.* v. *Nat'l, &c., Bank, supra,* at page 529; Sheldon on Subrogation, sec. 36-a; *Pease* v. *Eagan,* 131 N. Y. 262, 30 N. E. 102.

At section 218, Mr. Sheldon says: "Beneficiaries under a will who have, by the election of another legatee, been disappointed of what they would otherwise have received, will be allowed compensation for their loss out of what the latter would by a different election have taken under the will." Citing *Pickersgill* v. *Rodger,* 5 Ch. Div. 163; *Wilkinson* v. *Dent,* L. R. 6 Ch., 339, 341; *Reeve* v. *Reeve,* 1 Vern. 219; *Welby* v. *Welby,* 2 Ves. & B. 187, 190; *Bor* v. *Bor,* 3 Bro. P. C. 167; *Dean* v. *Hart,* 62 Ala. 308; *Key* v. *Griffin,* 1 Rich. Eq. (S. C.), 67; *Timberlake* v. *Parish,* 5 Dana (Ky.), 345.

The reason of the rule is stated in *Bor* v. *Bor, supra,* as follows: "Where a testator, making provision for the different branches of his family, gives a fee-simple estate to one, and a settled estate to another, imagining that he had power so to do, a tacit condition is implied to be annexed to the devise of the fee-simple estate, that the devisee thereof shall permit the settled estate to go according to the will; and if in that respect he should disappoint the will, what is devised to him shall go to the person so disappointed. It being presumed that if the testator had known his defect of power to devise the settled estate, he would out of the estate in his power have provided for that branch of his family who was not entitled to the settled estate, and have declared that no person should enjoy a legacy or devise who controverted his power as to any benefit given to another.' See also Sheldon on Subrogation, sec. 219.

It must be remembered that the present case is supplemental merely to the original suit of *Barraud* v. *Marshall,* and that the court possesses the same power of direction and disposition with respect to the court fund that could be exercised in the original case if the same were still pending. It will be

also noted that there is no suggestion, either in the pleadings or agreed statement of facts, of the intervention of any equity or the existence of any circumstance which should intercept the enforcement of the meritorious demand of the appellees to the court fund. They have confessedly been deprived of property which produced this identical court fund, by the election of parties whose right to have appropriated it in exoneration of that property cannot be questioned; and impotent, indeed, would be the processes of a court of equity, if it could devise no remedy for applying the "court fund" in reimbursement of the loss to which the appellees, without fault on their part, have thus been subjected.

Says Pomeroy, in his work on Equity Jurisprudence (2nd ed.), section 109: "Equitable remedies . . . are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties."

With all the parties and the subject matter before it, and with the ultimate destination of the fund, as it seems to us, plainly in sight, there could be no justification for a court of equity to relinquish its administration of the court fund in favor of a personal representative, on the theory that it is an asset of the estate, to the administration of which he is exclusively entitled.

This view of the case renders the consideration of the remaining assignment, with respect to the payment of costs, attorneys' fees and taxes, unnecessary.

For these reasons, the decree of the circuit court must be affirmed.

*Affirmed.*