# Richmond.

## J. R. Wheler Company v. R. H. James, et als.

### April 29, 1926.

1. Fraudulent and Voluntary Conveyances—*Fraud and Deceit—Proof of Fraud.*—While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be.

2. Fraudulent and Voluntary Conveyances—*Knowledge of Grantee—Proof of Knowledge.*—Where the fraud of a grantor in a deed, or of a seller of personal property, has been clearly shown, and it is sought to charge the grantee or purchaser with guilty knowledge, it is not necessary to prove that the latter had positive knowledge of such fraudulent intent. It is sufficient if he has knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the *bona fides* of the transaction as would necessarily have led to the discovery of the fraud of the grantor or seller.

3. Fraudulent and Voluntary Conveyances—*Notice—Knowledge of Grantee—Burden of Proof.*—The burden to prove notice is on him who alleges it, and whilst the fact of notice may be inferred from circumstances as well as proved by direct evidence, the proof must be such as to affect the conscience of one whose rights are by the notice made to depend, and must be so strong and clear as to fix upon him *mala fides.*

4. Fraudulent and Voluntary Conveyances—*Husband and Wife—Bona Fide Purchaser from Wife.*—In the instant case complainant charged that a conveyance by a husband to his wife was in fraud of creditors and asked that it be declared null and void. The court found that the conveyance was voluntary. From that decree there was no appeal. The trial judge found and the appellate court affirmed that the entire transaction, so far as the beneficiary in a deed of trust from husband and wife was concerned, was tainted with no fraud, and that he himself throughout the entire transaction acted with the utmost good faith. It followed that the beneficiary's rights were those of one who claimed under a deed voluntary and voidable. Notice on the part of the beneficiary of complainant's claim was not shown and his position was that of a purchaser for value without notice who was a party to no fraud.

5. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Knowledge of Grantee—Notice a Necessary Issue.*—In the instant case, a suit to set aside a deed of trust as fraudulent, the beneficiary's knowledge of the fraud was a necessary issue. It was not expressly charged in the bill though it is possible that it might be inferred from the charge of fraud. The beneficiary did not directly deny knowledge in his answer, but that answer fairly construed showed that he relied upon this defense.

   *Held:* That notice on the part of the beneficiary was not established but was disproved.

6. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Deed of Trust—Knowledge of Trustee or Beneficiary.*—In a suit to set aside a deed of trust as in fraud of creditors, notice of the fraud to the trustee is as fatal to the deed as notice to the beneficiary.

7. JUDGMENTS AND DECREES—*Decree Restricted to the Pleadings.*—A decree in equity must be restricted to the case made by the pleadings, no matter what the evidence may show.

8. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Notice to Grantee—Pleadings Must Put Notice in Issue—Knowledge of Either Beneficiary or Trustee in a Deed of Trust.*—In a suit by creditors to set aside a deed of trust as fraudulent, the pleadings should be so framed as to put in issue the question as to whether either the trustee or beneficiary had notice of the prior claims.

9. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Notice to Grantee—Bona Fide Purchaser—Pleading—Denying Notice.*—A purchaser who claims to be a purchaser for value without notice, must expressly deny notice in his answer, though it is not charged in the bill.

10. BONA FIDE PURCHASER—*Pleading the Defense—Demurrer, Plea or Answer.*—If a purchaser without notice neglects to protect himself by plea, he may defend himself by answer, but if he submits to answer, he must answer fully, although he might by demurrer or plea have protected himself. A defendant, who puts in answer but does not set up the defense of purchase for value without notice, cannot afterward insist on that defense.

11. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Deed from Husband to Wife—Presumption that Deed is Voluntary—Burden of Proof.*—Where a husband makes a post-nuptial settlement upon his wife, it is presumed to be voluntary; and on a bill filed by a creditor of the husband alleging it to be voluntary, the burden of proof is on those claiming under the settlement to show a valuable consideration in support of the settlement.

12. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Bona Fide Purchaser—Pleading the Defense.*—When a conveyance from husband to wife has been decreed to be voluntary and therefore voidable, one who claims under a deed from the wife must as against her husband's creditors set up the fact that he is a purchaser for value without

notice if he relies upon that defense, otherwise judgment will go against him as a matter of course.

13. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Setting Aside Some Provisions of the Deed.*—It does not follow that a deed from a husband to wife decreed to be voluntary and voidable to which the grantee failed to set up the defense of *bona fide* purchaser, may be entirely disregarded because some of its provisions are set aside or because some of the indebtedness therein secured was invalidated.

14. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Suit to Set Aside Conveyance—Notice to Trustee of Other Indebtedness—Case at Bar.*—In the instant case, a suit to set aside a deed of trust by husband to wife as in fraud of the husband's creditors, no notice to the trustee except notice of latent equities was of any moment. It was not necessary for him to deny knowledge of any other facts and his failure to do so is wholly unimportant.

15. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Suit to Set Aside Deed of Trust—Notice to Trustee of Other Indebtedness—Case at Bar.*—In the instant case, a suit to set aside a deed of trust as in fraud of creditors, $388.00 of the consideration for the deed of trust was an old debt due to the beneficiary long before complainant's indebtedness came into existence, and long before the execution of the deed of trust.

*Held:* That as to this $388.00 complainant had always been a junior creditor, and notwithstanding the trustee had not denied notice in the instant suit, the deed of trust should be sustained as to it.

16. PREFERENCES—*Validity.*—There is no law against preferring one creditor over another except that written into the statute of 1924, Acts of the General Assembly, page 657.

17. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Suit to Set Aside Conveyance—Notice to Trustee of Other Indebtedness—Case at Bar.*—In the instant case, a suit to set aside a deed of trust as in fraud of creditors, $500.00 of the consideration for the deed of trust was the assumption by the beneficiary of an old debt antecedent to complainant's debt secured by a deed of trust on the property.

*Held:* That as to this $500.00 complainant had always been a junior creditor, and notwithstanding the trustee had not denied notice in the instant suit, the deed of trust should be sustained as to it.

18. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Conveyance Set Aside as Fraudulent—Beneficiary in a Deed of Trust Paying an Antecedent Lien.*—Even where a conveyance is set aside as fraudulent one guilty of no actual fraud and who in good faith pays an antecedent lien on the property is protected. He is in equity and good conscience subrogated to this extent.

19. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Trustee's Notice of Prior Indebtedness—Case at Bar.*—In a suit to set aside a deed of trust as fraudulent if the trustee knew that the husband of the grantor was indebted to the complainant and that while so indebted gave

the land in question to his wife, then he knew that the wife's title was subordinate to complainant's claim. With knowledge of this latent equity he could take no title that might defeat it. In the instant case, the trustee may have known this and since he did not answer it must be assumed that he did know it. Therefore, as to the consideration for the deed of trust in question paid in cash by the beneficiary, complainant's claim was superior to the beneficiary's, but as to an antecedent lien on the property paid by the beneficiary and an antecedent debt due from the grantor to the beneficiary, the beneficiary's claim was superior.

Appeal from a decree of the Circuit Court of Brunswick county. Decree for defendant. Complainant appeals.

*Decree modified and affirmed.*

The opinion states the case.

*Buford & Raney*, for appellant.

*L. J. Hammack*, for the appellees.

Holt, J., delivered the opinion of the court.

On July 1, 1921, R. A. James was the owner of a tract of land containing fifty acres, which was conveyed to him by D. J. Seward in 1910, and another tract containing seventy-five acres, which was conveyed to him by James Wynn in the same year. R. H. James and Nannie P. James, his wife, by their deed dated February 16, 1915, conveyed the seventy-five acre tract to a trustee to secure the payment of a note for $500.00, and by their deed dated February 12, 1920, conveyed the fifty acre tract to a trustee to secure the payment of a note for $1,000.00, D. J. Seward being the holder of both notes.

R. H. James by his deed dated July 1, 1921, in consideration of "the sum of $100.00 and natural love and

affection," conveyed the tract containing seventy-five acres to his wife, Nannie P. James. On July 14, 1922, Nannie P. James and R. H. James, her husband, conveyed the seventy-five acre tract to D. J. Seward, trustee, in trust to secure $1,000.00 to W. B. Barlow which indebtedness was evidenced by five negotiable notes in the sum of $200.00 each. As a part of this transaction Barlow promised to pay and did pay the old $500.00 lien debt binding this seventy-five acre tract. Another consideration which went to make up the $1,000.00 secured was the sum of $388.00. That came about in this way: In 1912 James and wife bought a pair of mules from one Manson and gave their note therefor which was endorsed by Barlow. This note was renewed from time to time until it was reduced to about $550.00, when Barlow paid it and took a note to himself made by James and endorsed by his wife. This was finally reduced to $388.00 and this $388.00 indebtedness due from both James and wife went into the new $1,000.00 loan. There was a balance of $112.00 which was paid in cash.

To restate this transaction, this creditor agreed to and did pay a $500.00 debt on the land mortgaged to him. He took up and transferred to the mortgage indebtedness, thus created, pre-existing debt due to him of $388.00 and paid the balance of $112.00 over in cash.

At the time there was of record the following judgments against R. H. James:

| "Judgment creditor. | Obtained | Amount |
|---|---|---|
| "Manson & Shell Company | November 11, 1914 | $100.00 |
| "A. S. Daniel | February 10, 1921 | 53.33" |

On May 20, 1920, James was indebted to petitioner in the sum of $3,041.45, with interest from May 20, 1920, and on February 18, 1922, it instituted an action for the recovery of judgment thereon and at the April term, 1922, recovered judgment for the full amount of its claim.

In May, 1923, plaintiff instituted this suit and in its bill charged that the conveyance from James to his wife was for the purpose of hindering, delaying and defrauding it in the collection of the debt evidenced by the judgment of April, 1922.   The prayer of that bill is that this conveyance from husband to wife be declared null and void and that the land conveyed from said R. H. James to Nannie P. James be sold and the proceeds of such sale applied to the payment of liens binding this land in the order of their priority, and for general relief.

All that is said about the Barlow debt is this:

"That Nannie P. James and R. H. James, her husband, by deed dated July 14, 1922, and of record in the clerk's office aforesaid in Deed of Trust Book 13, at page 598, conveyed the said tract or parcel of land containing seventy-five acres, and more accurately described hereinabove, to D. J. Seward, trustee, in trust to secure the payment of five negotiable promissory notes waiving the homestead exemption, of even date with said deed, in the sum of $200.00 each, payable July 14, 1923, July 14, 1924, July 14, 1925, July 14, 1926, and July 14, 1927, respectively, with interest from date."

On the 18th day of June, 1923, the cause was referred to a master commissioner in chancery with directions to ascertain among other things whether the conveyance from James to his wife was for the purpose of hindering, delaying and defrauding R. H. James' creditors.   He

was also directed to state an account of liens in the order of their priority. The commissioner's report made under this reference was filed on July 21, 1923. He found that said conveyance was for the purpose of hindering, delaying, and defrauding R. H. James' creditors and stated the liens binding this debtor's estate. On July 30, 1923, the cause came on to be heard on this report without exception and by decree of that date the court found that "said conveyance from R. H. James to Nannie P. James, his wife, was voluntary and void as to existing creditors." It was set aside and the property was ordered to be sold to pay the indebtedness set out in the master's report in the order of priorities there written.

From this it appears that this transfer, which was charged to be fraudulent, was held to be voluntary. From that decree neither James nor his wife nor anyone else has appealed and no complaint is made as to it, and in this case must be accepted as final.

Barlow and Seward, trustee, had been made parties defendant. Seward did not answer at all; Barlow did answer on November 17, 1923. He said in part: "This defendant knows nothing of the considerations which prompted the said R. H. James to convey the seventy-five acres of land in the bill of complaint fully described to Nannie P. James, his wife, by deed dated July 1, 1921, and recorded in the clerk's office of Brunswick county, Virginia, in Deed Book 75, at page 30, but this defendant here emphatically states that he had no cause to believe this transaction was fraudulent, and on the other hand, he believed the same to have been a conveyance executed in good faith  *  *  *  *. That this defendant in this transaction acted in good faith, and it would be exceedingly inequitable and unjust for this defendant to lose this amount of money in view of the fact that he has been a party to no fraud,

if there be any fraud.   This defendant further says
that his lien as evidenced by the aforesaid deed of trust
in the amount of $1,000.00 is a valid and subsisting
lien in its entirety which this defendant is ready and
willing to aver, maintain and prove, as this honorable
court shall direct, and he humbly prays to be hence
dismissed with his reasonable costs and charges in this
behalf sustained, and he will ever pray, etc." He
further says that full value was given for the debt
secured.   In short, his position is that he is a purchaser
for value without notice and was a party to no fraud.

What degree of proof is necessary to establish fraud
in transactions of this character?

In *Crowder* v. *Crowder*, 125 Va. 80, 99 S. E. 746, the
court said:

[1, 2] "While fraud must be clearly proved by him
who alleges it, it is not necessary that it should be ex-
pressly shown.   It is rare that it can be.   The partici-
pants are not apt to discuss it, but actions speak louder
than words, and the transaction itself often furnishes
proof of the fraud that is entirely satisfactory, *Hazle-
wood* v. *Forrer*, 94 Va. 703, 27 S. E. 507; *Todd* v. *Sykes*,
97 Va. 143, 33 S. E. 517.   Where the fraud of a grantor
in a deed, or of a seller of personal property, has been
clearly shown, and it is sought to charge the grantee
or purchaser with guilty knowledge, it is not necessary
to prove that the latter had positive knowledge of such
fraudulent intent.   It is sufficient if he has knowledge
of such facts and circumstnaces as would have excited
the suspicion of a man of ordinary care and prudence, and
put him upon such inquiry as to the *bona fides* of the
transaction as would necessarily have led to the dis-
covery of the fraud of the grantor or seller.   *American
Net, etc., Co.* v. *Mayo*, 97 Va. 182, 33 S. E. 523; *Anderson*
v. *Mossy Creek Co.*, 100 Va. 420, 41 S. E. 854; *Flook* v.
*Armentrout*, 100 Va. 638, 42 S. E. 685."

As authority for the law as thus stated, *Flook* v·
*Armentrout*, 100 Va. 638, is cited.   It is there said:

"There is no direct proof in the record of any fraudu-
lent intent on the part of the appellants, nor of any
knowledge by them of any fraudulent purpose on the
part of the grantor.   It is not necessary, however, that
the grantees should appear to have had actual knowl-
edge of the grantor's unlawful purpose.   It is sufficient
if they had knowledge of facts and circumstances which
were naturally and justly calculated to excite suspicion
in the mind of a person of ordinary care and prudence,
and which would naturally prompt him to pause and
enquire before consummating the transaction.   If such
enquiry would have necessarily led to a discovery of the
fact, with notice of which he is sought to be charged,
he will be considered to be affected with such notice,
whether he made enquiry or not.   But while the fact
of notice may be inferred from circumstances as well
as proved by direct evidence, yet the proof must be·
such as to affect the conscience of the purchaser, and
must be so strong and clear as to fix upon him the·
imputation of *mala fides.   Fischer* v. *Lee*, 98 Va. 159, 35
S. E. 441; *Newberry* v. *Bank*, 98 Va. 471, 36 S. E. 515."

In *Carter* v. *Thorp*, 114 Va. 348, 76 S. E. 950, it is
said:

[3] "It is a well settled rule of law, as counsel for ap-
pellants contends, that the burden to prove notice is on
him who alleges it, and whilst the fact of notice may be·
inferred from circumstances as well as proved by direct
evidence, the proof must be such as to affect the con-
science of one whose rights are by the notice made to·
depend, and must be so strong and clear as to fix upon
him *mala fides.   Crane's Nest Coal Co.* v. *Va. Iron Co.,*

108 Va. 869, 62 S. E. 954 [1119]; *Vest* v. *Michie*, 31 Gratt. (72 Va.) 150, 31 Am. St. Rep. 722, and the authorities cited."

Here Barlow had paid $500.00 secured by a trust deed on this property antedating by many years every debt due by James except the Manson & Shell $100.00 judgment. He paid out in cash $112.00 and secured to himself an antecedent debt of $388.00 due to him from James and wife. About these facts there is no conflict. His deposition also is to the effect that he knew nothing about any of the claims being asserted here when his deed was taken. He informally consulted a lawyer and went to the clerk's office to find out about the title. A young lady there, probably a deputy, told him there was nothing against it except the $500.00 trust deed debt. It is true that plaintiff's judgment was then of record and Barlow had constructive knowledge of it, but he had constructive knowledge only of the fact that there was a judgment against Mr. James. No suit had been instituted to enforce it.

[4] Without undertaking to restate this evidence in detail it is sufficient to say that we have examined it with care and have reached the conclusion that the entire transaction, so far as Barlow was concerned, was tainted with no fraud and that he, himself, throughout the entire transaction acted with the utmost good faith. This was the conclusion reached by the trial judge. Men do not readily pay out good money in bad faith, nor knowingly make loans where the possibilities of repayment are apt to be swept from under them. It follows that Barlow's rights are those of one who claims under a deed voluntary and voidable.

[5] Notice is here a necessary issue. It is not expressly charged in the bill though it is possible that it may be inferred from the charge of fraud. *American*

*Net Co.* v. *Mayo,* 97 Va. 183, 33 S. E. 523. Nor has Barlow directly denied it in his answer, but that answer fairly construed shows that he relied upon this defense. There is magic in words, but the law takes no note of it. We take the substance and let the shadow go. On this issue we are of opinion that notice on his part has not been established, and has been disproven.

[6, 7, 8] The trustee has not answered at all. As to him no issue on notice has been framed and notice to him would have been as fatal as notice to Barlow himself. *Merchant's Bank* v. *Ballou,* 98 Va. 112, 32 S. E. 481, 44 L. R. A. 306, 81 Am. St. Rep. 715.

"A decree in equity must be restricted to the case made by the pleading no matter what the evidence may show." Note to *Mundy* v. *Vawter,* 3 Gratt. Anno. Rep. 518. In other words, it was necessary in this case that the pleadings be so framed as to put in issue notice both to the trustee and to Barlow.

[9] In *Rorer Iron Co.* v. *Trout,* 83 Va. 397, 2 S. E. 713, 5 Am. St. Rep. 285, *Dowman* v. *Rust,* 6 Rand. (27 Va.) 587, is cited to support this proposition: "A purchaser for value without notice, must expressly deny notice in his answer, though it is not charged in the bill. This is settled law."

In Kerr on Fraud the law is thus stated:

"The defense of purchase for value without notice cannot be admitted, unless it is pleaded.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Notice must be denied whether it be charged in the bill or not. Notice must be denied by way of averment in the plea, otherwise the fact of notice will not be in issue. But it is sufficient to deny notice generally; for it is not the office of a plea to deny particular facts, unless they are specially charged as evidence of notice..

If, however, particular facts are specially charged as evidence of notice, the plea must be accompanied by an answer denying the facts as specially and particularly as they are charged in the bill, so that the plaintiff may be at liberty to except to its sufficiency.

[10] "If a purchaser without notice neglects to protect himself by plea, he may defend himself by answer, but if he submits to answer, he must answer fully, although he might by demurrer or plea have protected himself. A defendant, who puts in answer but does not set up the defense of purchase for value without notice, cannot afterward insist on that defense."

Mr. Pomeroy has said:

"The allegations of the plea, or of the answer so far as it relates to this defense, must include all those particulars which, as has been shown, are necessary to constitute a *bona fide* purchase. It should state the consideration, which must appear from the averment to be 'valuable' within the meaning of the rules upon that subject, and should show that it has actually been paid, and not merely secured. It should also deny notice in the fullest and clearest manner, and this denial is necessary, whether notice is charged in the complaint or not." Pomeroy's Equity, section 785. See also 2nd Minor's Inst., page 977.

Since it is settled law that this issue must be raised and that the defendant must do this even though there be no suggestion of notice in the bill, the defense of purchaser for value without notice cannot be successfully relied upon in this case.

[11] "Where the husband makes a post-nuptial settlement upon his wife, it is presumed to be voluntary; and on a bill filed by a creditor of the husband alleging it to be voluntary, the burden of proof is on those claiming under the settlement to show a valuable considera-

tion in support of the settlement." Hogg's Equity Procedure, section 568.

[12] The net result is this: When a conveyance from husband to wife has been decreed to be voluntary and therefore voidable, one who claims under a deed from the wife must as against her husband's creditors set up the fact he is a purchaser for value without notice if he relies upon that defense, otherwise judgment will go against him as a matter of course.

[13] These rules which should be applied when notice is present or absent are, for reasons to be stated, in a large measure inapplicable to the deed in judgment, nor does it follow that such a deed may be entirely disregarded because some of its provisions are set aside, or because some of the indebtedness therein secured is invalidated. *Craig* v. *Hoge,* 95 Va. 275, 28 S. E. 317.

[14, 15, 16] No notice to this trustee except notice of latent equities is of any moment. It is not necessary for him to deny knowledge of any other facts and his failure to do so is wholly unimportant. When we come to consider in detail the item of $388.00 we find that it was an old debt to Barlow long before plaintiff's came into being, and of course before the execution of the deed of July 1, 1921. At that time a trust deed made to secure it would have been unassailable. There is no law against preferring one creditor over another except that written into the statute of 1924, Acts of the General Assembly, page 657. After the deed to Mrs. James there was still nothing to prevent preference of this debt which had continued to be the obligation both of herself and of her husband. And such a preference was all that was secured by the trust deed of July 14, 1922. The right to prefer this debt existed from the beginning. It was a debt of both of Mr. and of Mrs.

James and as against its preference, or any steps that might have been taken to give it preference, plaintiff never had any equities at all. It had always been a junior creditor. About these facts there is no conflict. Barlow knew them and it made no difference whether the trustee knew them or not. Had he answered and confessed knowledge this is all that it would have been possible for him to admit.

[17] In principle the same conditions obtain when we come to consider the $500.00 debt secured in the trust deed of February 15, 1915. When Barlow assumed and agreed to pay it he nowhere impinged upon plaintiff's rights. This debt was always a prior lien and no provision for its payment could do the plaintiff wrong. Here also the trustee could have known nothing but the truth and here at least the truth does not hurt.

[18] The defendant's right to recover the $500.00 which he has actually paid out in order to cancel a prior deed of trust on this very land might also be sustained for another reason. Even where a conveyance is set aside as fraudulent one guilty of no actual fraud and who in good faith pays an antecedent lien of this character is protected. He is, in equity and good conscience, subrogated to this extent.

In *Dickinson* v. *Patton*, 110 Va. 5, 65 S. E. 529, Judge Buchanan said:

"Whilst the conveyance to Mrs. Patton must be set aside as a fraud of the rights of her husband's creditors, it does not appear that she was guilty of actual fraud in the transaction, and she will be entitled to be repaid the purchase money lien paid off by her out of the proceeds of the property, and to have that lien treated as in force for her protection."

[19] It is only in connection with the $112.00 item of cash paid that notice or want of notice to the trustee

is important. If he knew that James was indebted to the plaintiff and that while so indebted gave this land to his wife, then he knew that the wife's title was subordinate to plaintiff's claim. · With knowledge of this latest equity he could take no title that might defeat it. He was not a purchaser for value without notice and took no title superior to that held by his grantors *quoad* the plaintiff's claim. There is here also no controversy about facts. The trustee may have known them all, and since he has not answered we must assume that he did, otherwise he would have made the issue.

The result is that the trust deed of July 14, 1922, must be sustained with the exception of the $112.00 item. That is to say it must be sustained to the extent of $888.00 with proper interest. The $112.00 item must be rejected. The decree appealed from modified as indicated must be affirmed.

*Decree modified and affirmed.*