644

## Richmond.

GEORGE J. MORITZ, ETC. v. H. C. REDD, TRUSTEE, ET ALS.

September 27, 1928.

The opinion states the case.

*S. S. P. Patteson*, for the appellant.

*David Meade White* and *A. J. Ellis*, for the appellee.

McLemore, J., delivered the opinion of the court.

This cause is before us upon an appeal from a decree of the Chancery Court of the city of Richmond, entered May 27, 1927.

The facts of the case are complicated and confusing, and will be set out only so far as is necessary for an understanding and appreciation of the issues involved.

On July 31, 1920, Dr. J. Shelton Horsley and wife entered into an agreement to sell to Robert H. Purvis a certain lot of land on Hermitage road in Henrico county for the sum of $19,000.00 to be paid for in installments; $9,000.00 of these installments were paid by Robert H. Purvis who was to receive a deed only when all of the purchase price was paid.

On or about February 9, 1921, Robert H. Purvis requested Dr. Horsley to make the deed for this property to his wife, Loretta M. Purvis, and a deed was accordingly drawn, signed by Horsley and wife, and also by Robert H. Purvis as evidence that he had requested a change of the grantee from himself to his wife. This deed was acknowledged by Horsley and wife on February 11, 1921, placed in escrow with Federal Trust Company to be delivered when the remaining $10,000.00 was paid, and was acknowledged by Purvis on July 7, 1921, and recorded on the same day in the clerk's office of Henrico county.

On July 7, 1921, Loretta M. Purvis and husband signed and acknowledged a deed of trust dated July

5, 1921, which was recorded simultaneously with the deed from Horsley, *et als.*, wherein the aforesaid real estate was conveyed to H. C. Redd, trustee, to secure the payment of a note for $10,000.00, executed by the grantors payable to their order at the Doswell State Bank and by them endorsed. By this deed of trust the money was secured to pay the remaining $10,000.00 due on the purchase price, and the validity of this procedure is not questioned. It is admittedly the first lien upon the property.

On July 8, 1921, Loretta M. Purvis and husband conveyed the same property to Alvin B. Hutzler, trustee, to secure a note for $10,000.00, and the same was deposited with the Central National Bank of Richmond as additional collateral for a considerable indebtedness due by Robert H. Purvis to the bank. As further protection the bank held collateral of Robert H. Purvis aggregating $70,000.00 to $80,000.00. The conveyance to Hutzler, trustee, was the second deed of trust upon the lot and buildings and was recorded July 9, 1921.

Alvin B. Hutzler, trustee by deed dated November 10, 1921, and recorded November 12, 1921, duly released the deed of trust of July 8, 1921, and on November 11, 1921, Mrs. Purvis and husband conveyed to Duff Green, trustee, the same property together with two automobiles to secure the payment of a note executed by Loretta M. Purvis for $21,050.00 payable to bearer twelve months after date at the Central National Bank. This deed was recorded November 12, 1921. There is upon this note the following endorsement:

"This note is secured by deed of trust (2nd lien) on property of Loretta M. Purvis located on Hermitage road, Henrico county, Virginia, and by 1st lien deed

of trust on one Peerless limousine and one Jeffry
touring car, November 9, 1921, (signed) Duff Green."

The $21,050.00 note is now held by John M. W.
Green and the good faith of this transaction has been
attacked by the appellant and will be discussed later.

Default having been made in the payment of the
debt secured in the deed to H. C. Redd, trustee, the
house and lot was by him sold at public auction on
June 1, 1922, to C. A. Zinke for $16,500.00, and after
some litigation involving the title, the details of which
are of no interest in this cause, the money was paid
into court and a deed executed and delivered to Zinke.

The terms under which this fund was paid into court
are set forth in the decree of July 21, 1922, "* * *
and that all liens and questions raised, be and are
hereby transferred to the money deposited in said
Richmond Trust Company to the credit of the court
in this cause, and that said money take the place of
said real estate as to any and all questions raised in
this suit."

The note secured in said Redd trustee deed, was
ordered paid, and the same with costs, expenses, in-
terest, etc., amounted to $11,583.05, leaving a balance
under the court's control of $4,916.95. To whom this
amount should be paid presents the real controversy
in the cause.

Appellants are claiming this balance by reason of
judgments against Robert H. Purvis confessed July 6,
1921, in favor of George J. Moritz and John J. Moritz,
now dead. The first confessed in the Law and Equity
Court of Richmond, the second in the U. S. District
Court for the Eastern District of Virginia, and both
docketed in Henrico county, where the land is located,
on July 11, 1921, four days after the deed to Loretta M.
Purvis (which had been in escrow since February 11,
1921) had been delivered to her and recorded.

These facts are set up in a bill in chancery filed July 21, 1922, by H. C. Redd, trustee, wherein he convenes all the lien creditors, as well as others in interest, and asks the court to determine to whom he shall pay the proceeds from the sale of June 1, 1922.

The decree of the learned chancellor appealed from in so far as pertinent to this discussion is:

"It further appearing that the petitioner, John M. W. Green, is the owner and holder of the said note for the sum of $21,050.00 secured by the said deed of trust to Duff Green, trustee, dated November 11, 1921, which he acquired in due course and for value, and that the said note has not been paid, and the court now proceeding to determine the rights of the parties to the said fund now in bank to the credit of the court in this cause, which fund is the remainder of the proceeds derived from the sale of the real estate mentioned and described in the said deeds of trust from Loretta M. Purvis and Robert H. Purvis, her husband, to H. C. Redd, trustee, dated July 5, 1921, and Duff Green, trustee, dated November 11, 1921, and being of the opinion that the rights of the said parties to the said fund are as hereinafter set out, doth accordingly adjudge, order, and decree as follows:

"(1) That the deed of trust from Loretta M. Purvis and Robert H. Purvis, her husband, to H. C. Redd, trustee, dated July 5, 1921, constituted the first lien upon the said real property which was sold by the said H. C. Redd, trustee, for $16,500.00 cash, which said lien was ordered paid by the decree entered herein on July 24, 1922.

"(2) That the deed of trust from Loretta M. Purvis and Robert H. Purvis, her husband, to Duff Green, trustee, dated November 11, 1921, constituted the second lien upon the said real estate, next in time to

the said deed of trust to H. C. Redd, trustee, and that John M. W. Green, the holder of the note for $21,050.00 secured by the said deed of trust from the said Loretta M. Purvis and Robert H. Purvis, her husband, dated November 11, 1921, is entitled to the fund in bank to the credit of the court in this cause as the beneficiary under the said deed of trust.

"(3) That the fund in bank to the credit of this court in this cause is not sufficient to pay the second lien in full, and the said John M. W. Green, the holder of the second lien, is entitled to the whole fund, which shall be applied as a credit on the said note for the sum of $21,050.00 owned and held by the said John M. W. Green.

"(4) That the money loaned by the said John M. W. Green on the said deed of trust to Duff Green, trustee, dated November 11, 1921, was advanced with the understanding that a note for $10,000.00 held by the Central National Bank, Richmond, Virginia, and secured by a deed of trust on the said real estate to Alvin B. Hutzler, trustee, dated July 8, 1921, should be paid off and discharged, so that the said John M. W. Green would have the second deed of trust on the said real property by virtue of the deed of trust to Duff Green, trustee, and the said lien for $10,000.00 having been paid with moneys advanced by the said John M. W. Green, the said John M. W. Green would be entitled in equity by way of subrogation to occupy the position held by the said bank.

"(5) That Geo. J. Moritz in his own right and as administrator of John J. Moritz, deceased, is not entitled to share in the said fund in bank to the credit of this court in this cause.

"The court doth further order that Charles O. Saville, who is hereby appointed a special commissioner

for the purpose, upon a certified extract of this decree, shall check upon the fund in the Richmond Trust Company to the credit of this court in this cause in favor of the following persons for the amounts set opposite their respective names:

"Chas. O. Saville (in full of clerk's costs), $ 21.40

"H. L. Hulce, treasurer (taxes on fund for the year 1927),.................. 10.30

"John M. W. Green, or A. J. Ellis and D. M. White, his attorneys (holder of note secured by the deed of trust to Duff Green, trustee),.................... 5,786.75

"$5,818.45"

The decree appealed from in sustaining the deed of trust from Loretta M. Purvis and husband to Duff Green, trustee, held among other things:

"That the money loaned by the said John M. W. Green on the said deed of trust to Duff Green, trustee, dated November 11, 1921, was advanced with the understanding that a note for $10,000.00 held by the Central National Bank, Richmond, Virginia, and secured by a deed of trust on the said real estate to Alvin B. Hutzler, trustee, dated July 8, 1921, should be paid off and discharged, so that the said John M. W. Green would have the second deed of trust on the said real property by virtue of the deed of trust to Duff Green, trustee, and the said lien for $10,000.00 having been paid with moneys advanced by the said John M. W. Green, the said John M. W. Green would be entitled in equity by way of subrogation to occupy the position held by the said bank."

If this ruling of the chancery court is correct, a discussion of the other questions raised in the petition would be without practical results.

The right of John M. W. Green to be subrogated to the lien of the Central National Bank as holder of the $10,000.00 note of Loretta M. Purvis and R. H. Purvis secured by the deed of trust to Alvin B. Hutzler, trustee, dated July 9, 1921, is one of the major contests to which counsel have directed considerable of their argument.

R. H. Purvis was indebted at this bank to the extent of about $21,000.00 and had collateral to protect same amounting to $80,000.00 or $90,000.00, a great deal of which was of doubtful value, or valueless. Included in this collateral was the $10,000.00 deed of trust note of July 9, 1921, thought to be good.

Purvis was apparently unable to realize upon the collateral, and the bank was insisting upon payment of the $21,000.00 obligation, attached to which was this $10,000.00 note. In this *dilemma*, they appealed to John M. W. Green to liquidate the indebtedness due the bank, satisfy an attachment served on the bank as garnishee by George J. Moritz, and take over the securities held by it, including the deed of trust note for $10,000.00.

Green agreed to finance the Purvises and took from them a deed of trust on the real estate aforesaid together with an assignment from the bank of the collateral held by it to secure a note for $21,050.00. This assignment was made, however, upon condition that all indebtedness to the bank should be paid, and the Moritz attachments satisfied or dismissed.

Before these transactions were consummated Green had a conference with the officers of the Central National Bank, and according to his uncontradicted testimony, agreed with them to advance sufficient money to pay Purvis' obligations to it, provided the bank would release the $10,000.00 deed of trust to

Hutzler, trustee, so as to make the deed of trust, which Loretta M. Purvis and Robert H. Purvis were to give him, the second lien—second only to the deed to H. C. Redd, trustee, to secure the purchase money. This arrangement was agreed to, the Hutzler deed of trust was released, by deed dated November 10, 1921, and the real estate was conveyed to Duff Green, trustee, on November 11, 1921, by Loretta M. Purvis and Robert H. Purvis, to secure the note of $21,050.00 heretofore referred to. Both the release deed, and the deed of trust were recorded November 12, 1921.

As a result of this arrangement with the bank, it was paid by Green $14,050.10 in cash, and there was paid on the attachment sued out by Moritz the further sum of $1,592.57, no part of which has apparently been recovered by the said Green.

Does this state of facts create a situation in which John M. W. Green should in equity be subrogated to the rights of the Central National Bank in the $10,000.-00 note secured in the Hutzler deed of trust?

The law as stated in *Turner* v. *Citizen's Bank*, 111 Va. 184, 68 S. E. 407, is as follows:

"Legal subrogation is not founded upon contract or privity or strict suretyship. It is born of equity, and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it. * * *

"He who bears the burden ought also to derive the benefit."

The doctrine is also recognized and approved in *Gatewood* v. *Gatewood*, 75 Va. 407.

■ The judgment creditors in this instance have in no just sense been prejudiced by applying the doctrine.

Before Green undertook to pay off the bank, the Moritz liens were subsequent to the claims of the bank as to all of the attached assets, and only upon the payment by Green of $13,550.10 were the attaching creditors able to realize upon this attachment. Had not Green intervened, it seems quite evident that the Moritz liens would have availed them nothing. The collateral, with the exception of the $10,000.00 deed of trust note, was of doubtful value, and the money advanced by Green to release the collateral, amounting to nearly $15,000.00, has not been paid back to him, and the $10,000.00 deed of trust note, which appears to have been the chief consideration moving him to make the advancement, is at best worth only $5,189.00 the balance in the custody of the court after paying off the first deed of trust.

Had the bank foreclosed on the securities in the first instance, it seems clear there would not have been realized sufficient to pay the Purvis indebtedness and Moritz would have received nothing.

The observations of Holt, J., in *J. R. Wheeler Company* v. *James*, 146 Va. 758, 132 S. E. 859, seem quite decisive of the principle here involved:

"In principle the same conditions obtain when we come to consider the $500.00 debt secured in the trust deed of February 15, 1915. When Barlow assumed and agreed to pay it he nowhere impinged upon plaintiff's rights. This debt was always a prior lien and no provision for its payment could do the plaintiff wrong.

Here also the trustee could have known nothing but the truth and here at least the truth does not hurt.

"The defendant's right to recover the $500.00 which he has actually paid out in order to *cancel a prior deed of trust on this very land* might also be sustained for another reason. Even where a conveyance is set aside as fraudulent one guilty of no actual fraud and who in good faith pays an antecedent lien of this character is protected. He is, in equity and good conscience, subrogated to this extent."

We think therefore that the learned chancellor in decreeing that Green was subrogated to all the rights in the note secured by the Hutzler deed of trust, was entirely justified by the facts already stated, and the same is affirmed.

A good deal has been said with reference to the fraudulent character of the deed of trust of November 11, 1921, and of the participation by Duff Green, trustee, and of John M. W. Green in the fraudulent purpose of the grantors. They may have started out with the fraudulent designs and wicked purposes ascribed to them by counsel for appellants, but we are unable to find any evidence in the record justifying such strictures or reflecting upon the *bona fides* of their part in the transactions.

*Decree affirmed.*